**ROYAL INDEMNITY COMPANY, a Corporation, Plaintiff-Respondent,**

**v.**

**Irving J. SHULL, et al., Defendants-Appellants.**

**No. 65401.**

Supreme Court of Missouri, En Banc.

Feb. 15, 1984.

Rehearing Denied March 20, 1984.

Steven Goldblatt, Samuel A. Goldblatt, William R. Kirby, John A. Michener, St. Louis, for defendants-appellants.

William F. James, St. Louis, for plaintiff-respondent.

BLACKMAR, Judge.

This declaratory judgment action is essentially a suit between two insurance companies, with liability claimants as interested spectators. Plaintiff-Respondent Royal Indemnity Company issued a liability insurance policy to Hertz Rental Company, designed to provide insurance coverage for Hertz's customers while they were driving automobiles rented from Hertz. State Farm Mutual Insurance Company, defendant-appellant, had issued an insurance policy to the father of Lawrence Feldman which would not provide coverage if the Hertz policy were found to provide coverage for Lawrence.

The vehicle in question was rented by Hertz's agent at the Columbia, Missouri airport to Jeffrey Simon, age 21, on October 14, 1979. Simon obtained the car as an accommodation to his cousin, Shelley Shull and to Larry Feldman, who was a friend of hers. Simon had no intention of driving or riding in the car himself, at least on its initial trip. Shull and Feldman travelled to St. Louis, for a party for her grandmother, who was also Simon's aunt. They were returning to Columbia that same evening, with Feldman driving, when a collision occurred in which both of them were killed.

The parties agreed to submit the case to the court on documentary evidence including the depositions of Simon and of the Hertz counter attendant. Because of the nature of this submission and the absence of live testimony, the trial court's assessment of credibility plays a minimal role in the case. There appears to be little factual dispute. Simon, Shull and Feldman were standing at the Hertz counter together. The latter two had apparently assumed that they would not be eligible to rent a car from Hertz because they were under 21. Simon carried on the dealings with the counter attendant. There is no evidence that there was any discussion with her about who would drive the car. It is clear also that she made no inquiry about who would drive and gave no directions about who would be authorized to drive the car and who would not.

The rental agreement contained, just above Simon's signature, the following provision:

Vehicle shall NOT be operated by any person except Customer and the following Authorized Operators who must be validly licensed to drive and have Customer's prior permission: persons 21 or over who are members of Customer's immediate family and permanently reside in Customer's household; the employer, partner, executive officer, or a regular employee of Customer; additional authorized operator(s) approved by Lessor in writing. Customer agrees not to permit use of Vehicle by any other person without Lessor's prior written consent.

There is no indication this provision was called to Simon's attention. The Royal Indemnity policy, which car renters never see, contained a standard omnibus clause defining insured to include

any other person while using an owned automobile ... with the permission of the named insured provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission ...

The rental agreement also provided that liability insurance coverage was furnished

for the customer and any operator authorized by the lessor, and that the coverage was void in Mexico. The agreement included eight prohibitions on uses of the vehicle, such as for racing, none of which is shown to have been violated. There was certainly nothing in the agreement which said that there would be no insurance coverage if a person other than the lessee were to drive the car. The agreement did provide that the customer would be liable to Hertz for all damage to the vehicle if the customer permitted it to be operated by an unauthorized operator. The contract language seems to be virtually identical to that used in *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo. banc 1979).

The trial court found in favor of Royal, holding that Hertz did not authorize Shull or Feldman to drive the car, that Feldman was not an authorized operator under the rental agreement, and that he was not covered by Royal's policy. The court went on to find that State Farm's insurance covered the driver. The Court of Appeals reversed, finding that Royal's policy provided coverage, and that State Farm's, by its terms, did not cover. We granted transfer, and now reach a decision consistent with that of the Court of Appeals, making some use of the opinion of Judge Gerald M. Smith.

We do not need to go beyond *Weathers*. There we considered the realities of automobile rental under modern conditions, and gave attention to the provisions of § 303.190.2(2), RSMo 1978, which mandate "omnibus" coverage, including both the named insured and persons driving the vehicle with the knowledge and consent of the named insured, for compliance with the Motor Vehicle Safety Responsibility Act. We pointed out that insurance provisions are to be construed wherever possible so as to afford coverage rather than to restrict it, and observed that under modern conditions automobile rentals are for a "broad, almost unfettered" use. The rental agreement in that case, just as this one, stated explicitly that the insurance coverage was not effective in Mexico, and that certain uses, such as for racing, were expressly prohibited. The policy, also indistinguishable from the one now before us, mentioned both "operation" and "use" of a rental car. We held that operation was synonymous with "driving," and that "use" is a broader term referring to the purpose for which the car was employed. One may use an automobile which he or she is not operating. We concluded that the driver of the automobile involved in *Weathers* was covered by liability insurance, even though he was not the lessee, and even though his operation of the automobile was prohibited by a literal reading of the terms of the rental agreement. The prohibition, we held, did not void the insurance coverage. There is a strong suggestion in *Weathers* that the lessor had demonstrated little interest in the provisions of the rental agreement limiting the persons permitted to operate the rented car, so long as the car was leased to a person whose credit was acceptable. The record in this case demonstrates the validity of the observation.

■ Counsel for Royal candidly admits that there is only one operative difference between *Weathers* and this case. There the lessee was riding in the vehicle while his companion was operating it; here Simon was not present in the vehicle, but had turned it over to Shull and Feldman, at least for the trip to St. Louis. We do not believe that this factual distinction is significant. The counter attendant had the opportunity to inquire as to who might be operating the vehicle, and did not. She testified that she had no idea who would operate it. Simon was not practicing any deception on Hertz. He was willing to obligate himself for the rental charges, and Hertz accepted him and his credit. The trip by Shull and Feldman to St. Louis was a "use" of the rented car by Simon, in the sense that it was something he wanted to bring about, as is shown by his lending of assistance in making the vehicle available to them. He retained the right of control over the automobile, so far as they were concerned, and could have demanded the return of the car at any time. This case is as strong for affording coverage as *Weathers*.

 The suggestion in *Weathers,* 577 S.W.2d 623, f.n. 9, that the lessee of a rental car is, realistically, in the position of a named omnibus insured under § 303.190.-2(2) remains valid. We did not base our *Weathers* decision on this observation, and do not do so as to the present case, but simply suggest that an automobile leasing company which effectively tenders its lessee complete dominion over the car during the term of the lease has a special duty to make clear the circumstances under which insurance coverage is not furnished.

*Weathers* was decided nearly five years ago, and was in the books for several months before the rental to Simon. It contained clear guidance for automobile leasing companies and their insurers, if there were genuine concerns about the persons who actually operate their leased vehicles. The lessor could ask for and obtain explicit information as to who would drive the car. If others besides the customer were listed, it is highly probable that express permission might be given, or, at least, that no objection would be voiced. Any actual objection could be voiced. The lesson apparently was not taken, or else the lessor was indifferent as to who drove the rented car so long as its charges were secured.

 State Farm's policy issued to Feldman's parents provides that it shall not apply if a "non-owned" vehicle used by the insured is owned by an organization in the "car business" and if the insured or the owner has other coverage applicable in whole or in part. Both qualifications have been met here, in view of our finding of coverage under the Royal policy. The State Farm policy, therefore, does not provide coverage.

The judgment is reversed and the case is remanded for the entry of a judgment consistent with this opinion.

RENDLEN, C.J., WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

DONNELLY, Judge, dissenting.

In my view, the majority errs when it makes determinative the failure of the Hertz counter attendant to ask Simon the question: Do you intend to violate the rental agreement and permit Feldman to drive the car?

I dissent.