**Arthur DRINKALL, Conservator of Dawn Drinkall, Appellee,**

**v.**

**USED CAR RENTALS, INC., Appellant.**

**No. 94–1105.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1994.

Decided Aug. 5, 1994.

Nathan A. Callahan, Waterloo, IA, argued (James E. Walsh, Jr. and Kellyann M. Lekar, on the brief), for appellant.

J. Bryan Schulte, Burlington, IA, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

In this diversity case, Used Car Rentals, Inc. (Used Car) appeals from a judgment of the district court[1] entered upon a jury verdict in favor of Dawn Drinkall. We affirm.

Used Car, a Nebraska corporation with offices in Nebraska, Kansas and Iowa, is in the automobile rental business. On April 29, 1991, Dawn Drinkall, an Iowa resident, was injured in an accident in Iowa when Bernard Bayles, a Nebraska resident, was driving a car he had rented from a Used Car office in Nebraska. At the time of the accident Bayles, who had formerly lived in Iowa, did not have a valid driver's license; Iowa had suspended his license indefinitely in March 1991. The events leading up to the accident are as follows.

On Friday, April 19, 1991, Laura Wineinger drove Bayles to Stan Olsen Hyundai in Omaha, Nebraska so that he could pick up his car after a repair. Bayles was told that his car was not ready, but that the dealership had arranged for him to obtain a rental car from Used Car. James Kluna, a Used Car employee, drove to the dealership, picked up Wineinger and Bayles, and took them to the Used Car office a few blocks away. On returning to the office, Kluna began filling out the rental agreement. The back of the agreement provided that a rental car only could be operated by a licensed driver over the age of twenty-one, and that if a car was obtained by a misrepresentation "all use of the vehicle was without [Used Car's] permission." Kluna asked for Bayles' driver's license, but Bayles told him his license was in his car at the dealership. Wineinger, who was nineteen years old at the time, also told Kluna that her license was at the dealership, but that she knew her license number. Kluna asked his manager, Tom McCoy, whether he should go back to the dealership with Wineinger and Bayles, so they could retrieve their licenses, but McCoy told him to complete the rental agreement. Kluna listed Wineinger and Bayles as the customers and Bayles as an authorized driver. Both Wineinger and Bayles signed the agreement, which stated they had read the back of the agreement and agreed to all the terms and conditions therein. The front of the agreement stated it expired on April 25, 1991, that the car was to be returned in clean condition and with one-half tank of gasoline, and that the bill was to be sent to Stan Olsen Hyundai.

Kluna testified that he had never seen written policies or manuals concerning preparation of rental agreements and his only instruction regarding preparation was "watch and learn." He stated he was instructed not to rent to a person who did not have a valid driver's license or who was under twenty-one years of age. However, he testified that he did not inform customers about the conditions, but ordinarily asked to see a license to verify a customer's age, address, and the license's expiration date. Nor did Kluna inform customers about any other terms and conditions of the agreement, other than telling them that cars had to be returned in clean condition and with gasoline, or tell them to read the back of the agreement before signing it.

Because Bayles did not have his license, Kluna told Bayles to call on Monday with the number. McCoy explained that if a dealership was paying for the rental, as in this case, Used Car did not demand that a customer show a license, but did so if a person was paying for the rental so that Used Car would have sufficient information about the customer if it needed to retrieve the car. Bayles did not call on Monday and Kluna did not call Bayles. In addition, no one at Used

---

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Car called Bayles or Wineinger at the expiration of the agreement. Instead, McCoy testified that Used Car "automatically" extended the agreement because the dealership informed Used Car that Bayles' car had not been repaired.

After the accident, Bayles and Wineinger went back to the rental office to fill out an accident report. No one at the office asked to see their licenses.

Drinkall's father, Arthur Drinkall, as Dawn's conservator, filed this action against Used Car, alleging vicarious liability under Iowa Code § 321.493, which provides "where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage." Before trial, Used Car conceded that Bayles was negligent, but argued that as a matter of law it was not liable. It first argued that Nebraska law, which does not provide for owner liability, applied. The district court disagreed and held that Iowa law applied. The court characterized the case as a tort with which Iowa had the most significant relationships. Alternatively, Used Car argued that it had not consented to Bayles' use of the car. It asserted that the rental agreement was void because Bayles misrepresented that he had a license and that the agreement was the only basis upon which a jury could find consent. Again, the court disagreed, noting that under Iowa law misrepresentation alone was not enough to establish non-consent.

At trial, the court instructed the jury that in order to find Used Car liable it had to find that Used Car "consented to Bernard Bayles' use of the vehicle at the time of the accident." The court further instructed the jury that Used Car "claim[ed] that the rental contract allowing Bernard Bayles to operate its vehicle is invalid because Bernard Bayles made material misrepresentations at the time of the lease." Bayles objected to the court's refusal to give his proffered instructions and interrogatories concerning consent. The jury found that Used Car had consented to Bayles' use at the time of the accident and awarded Drinkall $650,000.00 in damages, before an adjustment for comparative fault.

Bayles then filed motions under Fed.R.Civ.P. 50, renewing his choice-of-law, consent, and instruction arguments. The court denied the motions.

On appeal, Used Car argues that the district court erred in applying Iowa law. "A district court, sitting in diversity, must follow the choice-of-law approach prevailing in the state in which it sits." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.1994). In both contract and tort cases, Iowa courts apply the most-significant-relationships test. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987) (tort); *Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (contract). "The basic premise of the most significant relationships theory is that the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

Used Car correctly recognizes that "[t]he first step in determining whose law is to govern in a conflict situation is the characterization of what kind of case in involved." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir.1992). "The law of the forum controls this[,]" as well. *Id.* Used Car argues that the district court erred in characterizing the case as a tort action and that the court should have characterized it as a contract action, reasoning that its liability is premised on the rental agreement. Alternatively, Used Car argues that even if the court's characterization is correct, the court erred in concluding that Iowa had the most significant relationships with the controversy. We disagree on both grounds. In characterizing the case as a tort, the district court noted that the complaint alleged negligence and sought damages for personal injuries arising from the negligence. The court also noted that the complaint did not allege a breach of contract and the lack of a contractual relationship between Drinkall and Used Car. In concluding that Iowa had the most significant relationships to the tort, the court noted that the accident occurred in Iowa, Drinkall was an Iowa resident, Used Car had rented the car to Wineinger, an Iowa resident, Bayles had been an Iowa resident, and that Iowa

had suspended his license. The court believed that Iowa had an interest in protecting its resident and enforcing its liability statute for an accident occurring in the state.

We are persuaded that Iowa courts would characterize this case as a tort and conclude that Iowa had the most significant relationships to the case. In fact, this case is very similar to *Goetz v. Wells Ford Mercury, Inc.,* 405 N.W.2d 842 (Iowa 1987). In *Goetz,* an automobile sold in Minnesota was involved in an accident in Iowa, which injured Iowa residents. The residents brought suit against the Minnesota dealer, alleging vicarious liability. The state court found that Minnesota law was inapplicable to the "alleged tortious conduct" and that Iowa had the most significant relationships with the case. *Id.* at 843. The court noted that the accident and injuries occurred in Iowa, the plaintiffs were Iowa residents, the trial was in Iowa, and the judgment would be enforced there.

■ Used Car also argues that the district court erred in failing to grant its motion under Fed.R.Civ.P. 50. It claims that, as a matter of law, there was insufficient evidence that it consented to Bayles' use of the automobile. Used Car reasons that the rental agreement restricted use to licensed drivers and that the agreement was void because Bayles' misrepresented that he had a valid driver's license. Used Car argues that if "the rental contract is invalid, consent was never given." Used Car's logic is flawed. Under section 321.493, consent of an owner may be express or implied and implied consent may be found even in the face of an express restriction, if there is evidence of a "course of conduct inconsistent" with the restriction. *Moritz v. Maack,* 437 N.W.2d 898, 901 (Iowa 1989). "Ultimately, the issue of consent turns on the particular facts and circumstances of each case." *Id.*

For example, in *Webb v. Moreno,* 363 F.2d 97 (8th Cir.1966), a father, when his son first obtained his driver's license, instructed the son not to allow any other person to drive the family car. Two years later, the son let a friend drive the car and while driving the friend had an accident. A person injured in the accident brought suit against the father, alleging vicarious liability under section 321.-493. The father argued that he had not consented to use of the vehicle and in fact had expressly forbidden his son to allow anybody else to drive the car. Despite the restriction, this court found that the issue of implied consent was properly submitted to the jury. We noted that in the circumstances of the case, the father, "[a]s a parent of ordinary intelligence," should have anticipated that his son would have allowed a friend to drive the car and did nothing to ensure that his instructions to the contrary would be followed. *Id.* at 101.

■ Likewise, in this case there was sufficient evidence to submit the issue of consent to the jury. Indeed, there was ample evidence that by its conduct Used Car consented to Bayles' use of the car at the time of the accident. Used Car "demonstrated little interest in the provisions of the rental agreement limiting the persons permitted to operate the rented car." *Royal Indem. Co. v. Shull,* 665 S.W.2d 345, 347 (Mo.1984). In fact, Used Car did nothing at any time to discover whether Bayles had a valid license. At the time the agreement was signed, Kluna did not inform Bayles about the terms and conditions on the back and listed him as a customer and authorized driver, despite the fact he could not produce a license. When Bayles did not call in with his license number, Used Car did not follow up. Nor did it follow up when the agreement expired, but rather "automatically" extended it because of its business relationship with the dealership. The evidence was that Used Car was "indifferent as to who drove the rented car so long as its charges were secured." *Id.* at 348.

This case is similar to *Royal Indem. Co. v. Shull,* wherein the Missouri Supreme Court found that Hertz was liable for an automobile accident, despite the fact the driver was an unauthorized driver under the terms of the rental agreement.[2] In that case, Jeffrey Si-

---

2. Although *Shull* is a Missouri case dealing with coverage of an omnibus insurance policy, we believe it is instructive. In analyzing consent issues under section 321.493, Iowa courts rely on

"cases construing consent provisions of omnibus insured clauses in automobile liability insurance policies" and look to other "jurisdictions passing

mon went with his cousin Shelly Shull and her friend, Larry Feldman, to a Hertz rental facility. Simon rented a car and signed the agreement. As in this case, the back of the agreement restricted use to licensed drivers at least twenty-one years old. Simon did not plan on driving the car, but rented it for Shull and Feldman, who were both under twenty-one. While driving the car, Feldman was involved in an accident, in which he and Shull were killed. Hertz' insurance company, Royal Indemnity, filed a declaratory judgment action. The trial court found in the insurer's favor, holding that Hertz had not consented to Feldman's use of its car because he was not an authorized operator under the rental agreement. The state supreme court reversed, holding that Hertz was liable because it ignored the restriction on the back of the agreement. The court noted that the counter attendant never called the restriction to Simon's attention and "made no inquiry about who would drive and gave no directions about who would be authorized to drive the car and who would not." *Id.* at 346.

We also reject Used Car's related argument that the district court erred in refusing to give its proposed instructions and interrogatories on consent. We find no reversible error because the instructions and interrogatories were premised on Used Car's erroneous assumption that if the rental agreement was invalid, there could be no consent. *See Thornton v. First State Bank of Joplin,* 4 F.3d 650, 652 (8th Cir.1993) (party is only entitled to "instruction on its theory of the case [if] it is legally correct"). Although it does not appear that Used Car objected to the court's instructions as given, we reject its suggestion that the instructions misstated the law or unfairly misled the jury. "The trial court has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of [state] law." *Manning v. Lunda Constr. Co.,* 953 F.2d 1090, 1092 (8th Cir.1992) (per curiam) (internal quotation omitted). "Thus,

jury instructions are sufficient if they state the governing law fairly when read as a whole." *Id.* (internal quotation omitted).

Accordingly, the judgment is affirmed.

---

on the issue in the insurance context." *Moritz,* 437 N.W.2d at 902.

We do not believe that this case is similar to *Hertz Corp. v. Jackson,* 617 So.2d 1051 (Fla. 1993), on which Used Car relies. In that case,

the court held that Hertz was not vicariously liable when one of its rental cars was involved in an accident eleven days after Hertz reported the car as stolen. *Id.* at 1054.