**HARLAN FEEDERS, INC., A Nebraska corporation, Plaintiff,**

v.

**GRAND LABORATORIES, INC., a corporation, Duane Pankratz, individually, and Duane Pankratz, Trustee of the Duane Pankratz Trust, Defendants.**

No. C 93–4100.

United States District Court,
N.D. Iowa,
Western Division.

March 31, 1995.

E. Dean Hascall of Hascall, Junger, Garvey & Delaney, Bellevue, NE, for plaintiff Harlan Feeders, Inc.

George T. Qualley of Qualley & Associates, Souix City, IA, for defendants.

## ORDER RE: DEFENDANTS' MOTION TO DISMISS PUNITIVE DAMAGES CLAIMS

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND FACTUAL BACKGROUND ........................1402

II. LEGAL ANALYSIS ..............................................1403
 A. Conflict of Laws...........................................1403
 1. Characterization Of The Causes Of Action ...........................1404
 2. A True Conflict Of Laws ..........................................1404
 B. Iowa's Conflict-of-laws Rules.........................................1405
 1. The Iowa Conflict-of-laws Rules For Tort Cases......................1405
 a. Iowa's substantive-procedural or right-remedy dichotomy..........1405
 b. Content of the test in a tort case ..............................1409
 2. The Iowa Conflict-of-laws Rules For Contract Cases .................1410
 a. Choice or absence of choice of law in the contract...............1410
 b. Consideration of factors for choice of law as to contract claims....1412

III. CONCLUSION .................................................1413

---

This litigation was brought by a Nebraska livestock producer against the South Dakota maker of a livestock vaccine which is produced in the maker's Iowa plant. The livestock producer alleges that the vaccine caused illnesses and deaths among over two thousand head of cattle treated with it. The matter is presently before the court on defendants' motion to dismiss punitive damages claims on the ground that Nebraska law is applicable and does not allow such claims, whereas Iowa law allows punitive damages. The court must resolve the conflict-of-laws question of what state's substantive law applies to this controversy. The court must also determine whether punitive damages involve substantive law, and are therefore governed by the law of the state selected by application of Iowa's conflict-of-laws rules, or a question of procedural law, which is governed by the law of the forum.

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Harlan Feeders, Inc., a Nebraska corporation with its principal place of business in Harlan County, Nebraska, filed its complaint in this matter on November 10, 1993. Harlan Feeders is engaged in the business of feeding calves on its premises to finish weight and condition, and selling them for profit on the cattle slaughter market.

Some of the cattle involved in this lawsuit are alleged to have belonged to others and to have been placed with Harlan Feeders for feeding to finish weight and subsequent sale. The owners of these cattle have assigned to Harlan Feeders their rights to pursue on their behalf their claims against defendants in this lawsuit. Defendants are Grand Laboratories, Inc., a South Dakota corporation that does business in Iowa and Nebraska, and has a production facility in Lyons County, Iowa, where it produced the product at the center of this litigation, and Duane Pankratz, sued both individually and as trustee of the Duane Pankratz Trust, which is alleged to be the owner of a majority of the stock in Grand Labs (collectively herein "Grand Labs").

The gravamen of the complaint, which is in six counts, is that Grand Labs manufactured and sold Harlan Feeders a defective cattle vaccine, called "Vira Shield," which caused illnesses and deaths among over two thousand cattle to which Harlan Feeders administered it. The complaint alleges causes of action that sound in tort, including negligence and strict products liability, as well as contract or quasi-contract causes of action including misrepresentation or breach of warranty.[1] The complaint seeks actual and punitive damages.

---

1. The court is not confronted at this time with the precise question of whether these causes of action sound in tort or contract. Although the characterization of the cause of action determines the factors to be considered in application

of Iowa's conflict of laws rules, in the present case, the court finds that the conflict of laws rules for both tort and contract point to application of the substantive law of the same state.

On April 28, 1994, defendants moved to dismiss Harlan Feeders' punitive damages claims on the ground that Nebraska law applies in this diversity action, because Nebraska is the state with the most significant relationship to the causes of action presented, and Nebraska law does not provide for punitive damages. Harlan Feeders resisted the motion on May 2, 1994, contending, first, that Iowa substantive law should apply, because Iowa bears the most significant relationship to the causes of action presented, but also arguing that even if Nebraska substantive law applies, the law of Iowa applies to procedures and remedies, including punitive damages. On June 23, 1994, shortly before a hearing on Grand Labs' motion before the Hon. Donald E. O'Brien, now Senior Judge of this District, Grand Labs filed a reply brief asserting that Harlan Feeders has misread Iowa cases, which do not consider punitive damages to be remedial or procedural, but instead apply the most significant relationship test to determine the law applicable to punitive damages questions. Judge O'Brien reserved ruling on the motion following a hearing on July 1, 1994.

The submissions of the parties indicate that they are in general agreement as to the following facts concerning the contacts of the parties with each other and with the states of Nebraska, Iowa, and South Dakota. The citizenship and places of business of the parties were discussed above. Harlan Feeders' complaint indicates that it purchased and used the "Vira Shield" vaccine in Nebraska, and that its livestock were injured in Nebraska. Grand Labs asserts further that all communications between the parties took place in Nebraska, and no business has been transacted between the parties outside of Nebraska. Grand Labs therefore argues that all of the events leading to the complaint occurred in Nebraska, so Nebraska substantive law should apply. Harlan Feeders disputes only the fact that all communications took place in Nebraska: Harlan Feeders argues that some of the representations underlying its misrepresentation or breach of warranty claims were made by written statements and audio-

visual materials prepared, published, assembled, and/or produced by Grand Labs in either South Dakota or Iowa. Harlan Feeders also stresses that the vaccine was manufactured by Grand Labs at its facility in Iowa, a point Grand Labs does not dispute. Harlan Feeders asserts that the place of injury, Nebraska, is only "fortuitous" or "happenstance" and therefore should have little impact upon the court's conflict-of-laws analysis.

At the request of the parties, this matter lay dormant for several months while other litigation involving Grand Labs worked its way through the Eighth Circuit Court of Appeals. The parties hoped that the other litigation might resolve some of the questions concerning discovery of financial information from Grand Labs and concerning punitive damages. That other litigation has now concluded. In the interim, this matter was reassigned to me.[2]

By order dated December 20, 1994, the court ordered the parties to file reports on the status of the motion to dismiss punitive damages, whether the parties were seeking or had reached a stipulation that would solve the discovery problems as to punitive damages, and whether they wished to supplement their prior filings in support of or resistance to the motion to dismiss punitive damages in light of the resolution of the other litigation. Both parties, rather belatedly, responded to the court's order by filing their reports, Grand Labs on January 23, 1995, and Harlan Feeders on January 25, 1995. Both parties state that the resolution of the other litigation involving Grand Labs has had no effect upon the present litigation, and both parties stated their desire to stand by their previous briefs on the issue of dismissal of the punitive damages claim. With this background, the court turns to disposition of the motion to dismiss punitive damages.

## II. LEGAL ANALYSIS

### A. Conflict of Laws

■ To resolve the issue of which state's law applies to Harlan Feeders' claim for

---

2. On August 30, 1994, I was appointed United States District Court Judge for the Northern District of Iowa.

punitive damages, the court looks to the conflict-of-laws or choice-of-law rules of the state of Iowa, because in an action based upon diversity of citizenship jurisdiction, a federal district court must apply the substantive law of the state in which it sits, including its conflict-of-laws or choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Drinkall v. Used Car Rentals, Inc.*, 32 F.3d 329, 331 (8th Cir.1994); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.1994); *Smith v. Gould, Inc.*, 918 F.2d 1361, 1363 n. 3 (8th Cir.1990) (citing *Klaxon* ); *Modern Leasing, Inc., of Iowa v. Falcon Mfg. of Cal., Inc.*, 888 F.2d 59, 62 (8th Cir.1989) (citing *Klaxon* ); *Lourdes High School of Rochester, Inc. v. Sheffield Brick & Tile Co.*, 870 F.2d 443, 445 (8th Cir.1989) (same); *Freeze v. American Home Prod. Corp.*, 839 F.2d 415 (8th Cir.1988); *Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n. 4 (8th Cir.1984), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3491, 87 L.Ed.2d 625 (1985) (same).

### 1. Characterization Of The Causes Of Action

■ The first step in determining any choice-of-law question is to determine the proper characterization of what kind of case is involved, and the law of the forum controls this question as well. *Drinkall*, 32 F.3d at 331 (citing *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir.1992)). The court noted above that although most of Harlan Feeders' claims are best characterized as torts, there is at least a possibility that some may be characterized as sounding in contract. Under Iowa law, the same general test is applied to conflict-of-laws questions for tort and contract claims, but the factors considered in each context differ. Therefore, confronted with some ambiguity about the proper characterization of some of Harlan Feeders' claims, the court will consider Iowa's conflict-of-laws rules for both kinds of causes of action, tort and contract, rather than consider the proper characterization of the claims, which is a matter not briefed by the parties.

### 2. A True Conflict Of Laws

■ Before any choice of law need be made, there must be a "true conflict" between the laws of the possible jurisdictions on the pertinent issue. *See Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir.1995) (first question was whether there was a "true conflict of laws," and where there was no doubt that case presented a "true conflict," court turned to consideration of which jurisdiction's law should apply under Minnesota conflict-of-laws rules); *Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir.1994) (under California's "governmental interest" test for choice of law, court must first determine whether "true conflict" exists between the laws of the jurisdictions); *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 956 (5th Cir.1992) (court first determined that there was a "true conflict" between the laws of Michigan and Texas applicable to the issues before it); *Fuerste v. Bemis*, 156 N.W.2d 831 (Iowa 1968) (court should distinguish between a "true conflict" and a "spurious conflict" of laws); *but see Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir.1994) (court must still determine applicable law under choice-of-law rules even if no "true conflict" exists). Such a true conflict exists in the present case.

Punitive or exemplary damages are prohibited by the Constitution of the State of Nebraska. Nebraska Const. Art. VII, § 5; *Braesch v. Union Ins. Co.*, 237 Neb. 44, 58, 464 N.W.2d 769, 777 (1991) ("punitive damages are not allowed in Nebraska," citing *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960)); *Distinctive Printing and Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989); *Miller v. Kingsley*, 194 Neb. 123, 124, 230 N.W.2d 472, 474 (1975) ("It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed. The measure of recovery in all civil cases is compensation for the injury sustained," citing *Abel* ); *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960). In contrast to the Nebraska rule, Iowa law provides for punitive damages in civil cases, establishing by statute and by common-law the availability and substantive requirements for punitive damages claims.

*See* Iowa Code § 668A.1 (establishing substantive requirements for punitive damages in civil cases in Iowa);[3] *Clark–Peterson Co., Inc. v. Independent Ins. Assocs., Ltd.,* 514 N.W.2d 912, 916 (Iowa 1994) (punitive damages for breach-of-contract claims or claims of fraudulent misrepresentation are generally allowed only where there has been a showing of malice, fraud, or other illegal acts). Thus, there is a "true conflict" between the law of Nebraska and the law of Iowa regarding the right to seek punitive damages in a civil action.

### B. Iowa's Conflict-of-laws Rules

■ Iowa applies the "most significant relationship test" to conflict-of-laws or choice-of-law questions involving either contract or tort claims. *See Christie v. Rolscreen Co.,* 448 N.W.2d 447, 450 (Iowa 1989) (recognizing that the "most significant relationship" test applies to tort causes of action, citing *Zeman v. Canton State Bank,* 211 N.W.2d 346, 349 (Iowa 1973)); *Cameron v. Hardisty,* 407 N.W.2d 595, 597 (Iowa 1987) (tort); *Cole v. State Auto. & Cas. Underwriters,* 296 N.W.2d 779, 781 (Iowa 1980) (contract); *Zeman,* 211 N.W.2d at 349 (tort issue); *Lindstrom v. Aetna Life Ins. Co.,* 203 N.W.2d 623 (Iowa 1973) (contract issue); *Berghammer v. Smith,* 185 N.W.2d 226 (Iowa 1971) (tort issue); *In re Marriage of Whelchel,* 476 N.W.2d 104, 109 (Iowa Ct.App.1991) (in marital property case, the court noted that "[i]n other areas of the law, Iowa has adopted, as choice-of-law doctrine, the "most significant relationship" rule espoused by the Restatement (Second) of Conflict of Laws," citing *Lindstrom* and *Berghammer* ); *see also Drinkall,* 32 F.3d at 331 (citing *Cameron,* 407 N.W.2d at 597 (tort), and *Cole,* 296

N.W.2d at 781 (contract)); *Gould, Inc.,* 918 F.2d at 1363 n. 3 (citing *Cole* (contract), and *Zeman* (tort)). However, the factors the court is to consider are not identical in the context of torts and contracts, as will become apparent from the discussion that follows.

### 1. The Iowa Conflict-of-laws Rules For Tort Cases

#### a. Iowa's substantive-procedural or right-remedy dichotomy

Before examining the content of the "most significant relationship" test in the context of a tort cause of action, the court must first determine to what the law chosen using Iowa's conflict-of-laws rules will apply. The Iowa Supreme Court has stated that

> the local law of the state having the most significant relationship with the occurrence and with the parties controls their rights, obligations and liabilities in tort.

*Zeman,* 211 N.W.2d at 349; *see also Christie,* 448 N.W.2d at 450 (recognizing *Zeman* as controlling on this issue, but finding it unnecessary to decide this issue in the appeal before it). However,

> procedural matters and matters pertaining to the remedy to be applied must be determined by the law of the forum. *Kingery v. Donnell,* 222 Iowa 241, 268 N.W. 617 (1936); *Dorr Cattle Co. v. Des Moines Nat. Bank,* 127 Iowa 153, 98 N.W. 918 (1904).

*Brooks v. Engel,* 207 N.W.2d 110, 113 (Iowa 1973); *see also Cameron v. Hardisty,* 407 N.W.2d 595, 596 (Iowa 1987) ("Iowa's choice of law rule, with two exceptions, requires the application of local law to matters of procedure," citing *Brooks*).[4]

---

3. Iowa Code § 668A.1 provides in pertinent part:
 1. In a trial of a claim involving the request for punitive or exemplary damages, the court shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating all of the following:
 a. Whether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.
 * * * * * *
 2. An award for punitive or exemplary damages shall not be made unless the answer or finding pursuant to subsection 1, paragraph "a", is affirmative. . . .

4. The two exceptions cited in *Cameron* involve statutes of limitations, and thus are not applicable here. In *Cameron,* although the Iowa Supreme Court admitted that it had "traditionally viewed statutes of limitations as procedural rather than substantive," citing *Harris v. Clinton Corn Processing Co.,* 360 N.W.2d 812, 814 (Iowa 1985), the court found that two exceptions to this designation obtained where (1) a former resident of another jurisdiction moves to Iowa, but, under Iowa Code § 614.7, is prohibited from taking advantage of Iowa's longer statute of limitations, and (2) where a statute of limitations embodied in another jurisdiction's cause of action acts as a grant of immunity, and Iowa common law would forbid extending the statute of limitation by oper-

In *Cameron,* the Iowa Supreme Court did not reject this "procedural-substantive or right-remedy" distinction. *Cameron,* 407 N.W.2d at 597. If anything, the court reaffirmed its vitality by discussing the exceptions to application of its "procedural" statute of limitations. *Id.* at 596. What the court did do was reaffirm that issues concerning the "rights and liabilities" of the parties are determined by application of Iowa's choice-of-law rules, and those rules are embodied in the Restatement (Second) of Conflict of Laws:

> [W]e reject plaintiff's presumption that Nebraska law will apply to issues of liability and damages [apparently on the basis that Nebraska was the place of impact]. Iowa has adopted the "modern" choice of law rules, formulated in accordance with the Restatement (Second) of Conflicts section 145(1):
>
>> The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. . . .
>
> Numerous decisions of this court have recognized and applied this issue-oriented "most significant relationship" doctrine. *Goetz v. Wells Ford Mercury, Inc.,* 405 N.W.2d 842, 843 (Iowa 1987); *Zeman v. Canton State Bank,* 211 N.W.2d 346, 348–49 (Iowa 1973); *Fabricius v. Horgen,* 257 Iowa 268, 132 N.W.2d 410 (1965).

*Cameron,* 407 N.W.2d at 597. Unfortunately, finding little in the record to provide a "working basis" for a substantive choice of law analysis," the court gave little attention to issues of damages or punitive damages in its most significant relationship analysis, "presum[ing] that the law of liability and damages" applicable in Idaho, Nebraska, Iowa, or Minnesota "presents no true conflicts in this simple negligence action," and finding that Iowa had the most significant relationship of the possible states on the basis of policy interests and residence in Iowa of two of the defendants. *Id.* at 597.

Iowa courts have recognized that certain issues are "procedural," hence governed by ation of Iowa's own limitation statute, even if

the law of the forum. *Cameron,* 407 N.W.2d at 596 (with only two exceptions, statutes of limitations are procedural, hence governed by law of the forum); *Brooks,* 207 N.W.2d at 113 (with few exceptions, local law of forum applies to questions of admissibility of evidence). The difficult question, directly posed here, is whether punitive damages raise "substantive" or "rights" issues, or instead raise "procedural" or "remedies" issues.

The court has found little in the decisions of Iowa courts that provides much guidance as to what distinguishes "substantive" or "rights" issues from "remedies" or "procedural" issues beyond the cases cited immediately above. However, the Eighth Circuit Court of Appeals recently examined this question as it pertained to Minnesota's conflict-of-laws rules, which also make a substantive/procedural distinction. *Nesladek,* 46 F.3d at 736. In *Nesladek,* the court observed that

> [i]n Minnesota, " '[i]t has long been recognized that substantive law is that part of law which creates, defines, and regulates rights, as opposed to "adjective or remedial" law, which prescribes method [sic] of enforcing the rights or obtaining redress for their invasion.' " *Zaretsky v. Molecular Biosystems, Inc.,* 464 N.W.2d 546, 548 (Minn.Ct.App.1990) (quoting *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871, 879–80 (1958)).

*Id.* The court therefore found it an easy matter to classify Nebraska's statute of repose and Minnesota's useful life statutes as substantive, even though statutes of limitations are generally considered procedural. *Id.* The court reasoned as follows:

> A statute of repose . . . directly impacts on the accrual of a cause of action in the first instance. It operates as a statutory bar independent of the actions (or inactions) of the litigants—often before those litigants can even be identified. *See Zaretsky,* 464 N.W.2d at 550 (finding prejudgment interest statute procedural because, inter alia, it "applies to the relationship of the parties as litigants"). Although the Nebraska statute of repose does not create rights, it

longer. *Cameron,* 407 N.W.2d at 596.

is no less substantive because it imposes a disability upon potential claimants. Or, viewed another way, it creates in the potential products-liability defendant a right to immunity from suit under the circumstances set out in the statute. *See Norwest Bank Neb., N.A. v. W.R. Grace & Co.-Conn.,* 960 F.2d 754, 759 (8th Cir.1992) (interpreting Nebraska law). The statute of repose "regulates rights," not remedies. It does not dictate a "method of enforcing the rights or obtaining redress for their invasion." *Zaretsky,* 464 N.W.2d at 548 (quoting *Meagher,* 88 N.W.2d at 880). Rather, its effect is that ten years after a product first is sold there can be no rights to enforce, regardless of any subsequent injury related to the product's use. *Cf. Stern v. Dill,* 442 N.W.2d 322, 324 (Minn. 1989) (finding a Minnesota statute to be procedural for purposes of extending filing deadlines because "it does not change [plaintiff's] basic right to sue for negligence"). By the same token, Minnesota's useful life statute regulates the rights of a defendant in a products liability suit, that is, it creates the right to present a substantive defense—the useful life defense—to such a suit. "Expiration of useful life is a defense" and "a factor to be weighed by the jury in determining the fault of the manufacturer and the fault of the user." *Hodder [v. Goodyear Tire & Rubber Co.],* 426 N.W.2d [826] at 832 [ (Minn.1988) ]. It is no more a procedural bar—a statute of limitations type of defense—than is the Nebraska statue of repose.

*Id.* at 736–37 (footnotes omitted).

Harlan Feeders, seeking application of Iowa law, which provides for punitive damages, argues that punitive damages are "remedies," and thus will be governed by Iowa law even if Nebraska substantive law is applicable. Harlan Feeders relies heavily on

*Fabricius v. Horgen,* 257 Iowa 268, 132 N.W.2d 410, 416 (1965), and in particular on its statement that "[q]uestions as to who may maintain an action in Iowa, for whom, and the measure of damage are determined by the law of the forum." *Fabricius,* 132 N.W.2d at 416.[5] Harlan Feeders recognizes that *Fabricius* was decided before adoption of the Restatement (Second) of Conflict of Laws, but asserts that *Brooks* continued the viability of this proposition from *Fabricius* under Iowa law, despite changes in the Restatement, because *Brooks* states that "matters pertaining to the remedy to be applied must be determined by the law of the forum." *Brooks,* 207 N.W.2d at 113. The court does not agree.

First, *Brooks* does not even address the question of what damages are available, assuming that "damages" and "remedies" are equivalent, which the court does not admit to be the case. Instead, *Brooks* considered the very narrow question of whether admissibility of evidence was a procedural matter governed by the law of the forum, concluding that forum law applied to the question. *Brooks,* 207 N.W.2d at 113. In a more recent case, it has been apparent that the Iowa Supreme Court considers damages to be a matter of substantive law. Thus, in *Cameron,* the court applied the most significant relationship test to the question of "the law of liability and damages." *Cameron,* 407 N.W.2d at 597.

Second, in *Cameron,* the Iowa Supreme Court stated that "Iowa has adopted the "modern" choice of law rules, formulated in accordance with the Restatement (Second) of Conflicts section 145(1)." *Id.; see also Baedke v. John Morrell & Co.,* 748 F.Supp. 700, 702 (N.D.Iowa 1990) (Iowa has explicitly adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws). A companion to § 145 of the

---

5. Harlan Feeders argues that *Fuerste v. Bemis,* 156 N.W.2d 831, 833 (Iowa 1968), is in accord with *Fabricius,* because it quotes *Fabricius'* holding that "the measure of damages [is] determined by the law of the forum." *Fuerste,* 156 N.W.2d at 833. However, *Fuerste* actually rejects *Fabricius'* refusal to apply the "most significant relationship" test to the "guest statute" in question in both cases. *Fuerste,* 156 N.W.2d at

833. Instead, the court concluded that the "most significant relationship" test should be used "in determining the substantive law to be applied to each issue in litigation involving a torts-conflicts question. This is particularly true of the guest statute as the legal significance of the relationship should not shift as the automobile passes from state to state." *Id.*

Restatement (Second) of Conflict of Laws is § 171, which discusses the application of conflict-of-law rules to damages:

> § 171. Damages
>
> The law selected by application of the rule of § 145 determines the measure of damages.

The comments to this section of the Restatement include one precisely on point:

> d. *Exemplary damages.* The law selected by application of the rule of § 145 determines the right to exemplary damages.

Restatement (Second) of Conflict of Laws, § 171, comment d. *Accord Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312 (8th Cir.1991) (applying Restatement (Second) of Conflict of Laws, § 171 and § 145 to determine that punitive damages were governed by the substantive law of Nebraska, in part because Nebraska's interest in prohibiting punitive damages outweighed the Virgin Islands' slight interest in imposing them); *Dobelle v. National R.R. Passenger Corp.*, 628 F.Supp. 1518, 1528 (S.D.N.Y.1986) (§ 145 of Restatement required application of substantive law of Pennsylvania to assessment of punitive damages, because Pennsylvania's interest in having its punitive damages law apply was strongest). Thus, applying the conflict-of-laws rules of the Restatement (Second) of Conflict of Laws embraced by the Iowa Supreme Court, it follows that damages, including punitive damages, are a matter of substantive law governed by the law of the state selected by application of the conflict-of-laws rules.

Third, application of the substantive/procedural distinction, as described by the Eighth Circuit Court of Appeals in *Nesladek*, 46 F.3d at 736–37 (applying Minnesota law), would lead to the conclusion that punitive damages are a matter of substantive law. The Constitution of the State of Nebraska establishes the immunity of civil defendants to punitive damages claims, or, to put it another way, establishes that civil plaintiffs have no claim for punitive damages. Article VII, § 5, of the Nebraska Constitution operates as a bar independent of the actions (or inactions) of the litigants—even before those litigants can even be identified. *Nesladek*, 46 F.3d at 737. By the same token, Iowa

Code § 668A.1 plainly establishes substantive requirements for any award of punitive damages, thus defining the right to punitive damages, and as a concomitant, creates a substantive defense to such a claim on the ground that the requirements for imposition of punitive damages cannot be met. *Id.* It does not merely dictate a "method of enforcing the rights or obtaining redress for their invasion." *Id.* The court concludes that the punitive damages laws of each jurisdiction involved here are plainly substantive, and therefore must be governed by the substantive law of the jurisdiction chosen by application of Iowa's conflict-of-laws rules.

Harlan Feeders nonetheless cites two cases as demonstrating that courts apply the law of the forum to the question of punitive damages. *See In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 734 F.Supp. 1425 (N.D.Ill.1990); *Patten v. GMC, Chevrolet Motor Div.*, 699 F.Supp. 1500 (W.D.Okla.1987). However, a careful reading of both cases demonstrates that in each of them, the law of the forum was selected for the question of punitive damages, not because punitive damages involved a procedural issue, but because the forum had the most significant relationship to the issue, and thus the forum's *substantive* law of punitive damages was applicable. *See In re Air Crash Disaster at Sioux City*, 734 F.Supp. at 1432–33, 1435 (considering interests of various states to determine most significant relationship for law of punitive damages); *Patten*, 699 F.Supp. at 1506 (same).

In fact, the court has found no authority that runs contrary to the proposition that punitive damages are a matter of substantive law, and the applicable law must be determined by application of the most significant relationship test. *See, e.g., Johnson v. Occidental Fire & Cas. of North Carolina*, 954 F.2d 1581, 1585 (11th Cir.1992) (summary judgment on issue of punitive damages was appropriate after determining which state's substantive law applied to the question); *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312 (8th Cir.1991) (applying Restatement (Second) of Conflict of Laws, § 171 and § 145 to determine that punitive damages were governed by the substantive

law of Nebraska, in part because Nebraska's interest in prohibiting punitive damages outweighed the Virgin Islands' slight interest in imposing them); *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, 605 (7th Cir.1981) (A question of punitive damages is a question of substantive law, and thus is to be resolved using Illinois choice-of-law rules); *Clark v. Associates Commercial Corp.*, 870 F.Supp. 1011, 1014 n. 3 (D.Kan.1994) (although Kansas follows the *lex loci delicti* rule, "the substantive prerequisites for the imposition of punitive damages in Kansas and Tennessee do not materially differ, and the court need not decide this choice of law question."); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on November 15, 1987*, 720 F.Supp. 1455, 1464 (D.Colo.1988) (substantive law of Texas applied to punitive damages questions); *Dobelle v. National R.R. Passenger Corp.*, 628 F.Supp. 1518, 1528 (S.D.N.Y.1986) (§ 145 of Restatement required application of substantive law of Pennsylvania to assessment of punitive damages, because Pennsylvania's interest in having its punitive damages law apply was strongest); *Mayes v. Gordon*, 536 F.Supp. 2 (D.C.Tenn.1981) (under Tennessee conflict-of-laws rules, substantive law of Kentucky governed issue of whether plaintiff could recover punitive damages); *and compare Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991) (parties' choice-of-law clause upheld as determining substantive law for punitive damages even though clause selected state which did not allow punitive damages for claim involved and other state did allow punitive damages, because public interest of other state did not outweigh choice of parties). Therefore, the court concludes that whichever state's substantive law applies under Iowa's choice-of-law or conflict-of-laws rules will also apply to the imposition of punitive damages in this case.

### b. Content of the test in a tort case

The court turns next to the question of what factors should be considered in analyzing which forum, Iowa or Nebraska, has the most significant relationship to the tort claims in this case. The Iowa Supreme Court has stated that

[c]onsiderations include: place of injury, place of conduct leading to the injury, domicile of the parties, and the place where any relationship between the parties is centered.

*Zeman*, 211 N.W.2d at 349; *see also Christie*, 448 N.W.2d at 450 (quoting *Zeman* ). These are also the factors listed in Restatement (Second) of Conflict of Laws, § 145(2), which the Iowa Supreme Court has adopted. *Cameron*, 407 N.W.2d at 597.

■ However, among these factors, the "place of impact" has little importance where the state that is the place of impact has no other interest in the case. *Cameron*, 407 N.W.2d at 597. Iowa courts have recognized that this is a departure from the longstanding rule that "the substantive law of the place of the wrong governs regardless of the law of the forum." *Zeman*, 211 N.W.2d at 348 (citing *Fessenden v. Smith*, 255 Iowa 1170, 124 N.W.2d 554 [ (1964) ], as applying this longstanding rule). However,

[i]n a series of cases culminating in *Fuerste v. Bemis*, 156 N.W.2d 831 (Iowa 1968), and *Berghammer v. Smith*, 185 N.W.2d 226 (Iowa 1971), we rejected the lex loci delicti doctrine and supplanted it with the most significant relationship test.

*Id.* at 349.

■ Harlan Feeders argues that the place of any injury resulting from production of a defective product is only "happenstance" or "fortuitous," and therefore emphasizes production of the product in Iowa, Iowa's benefits from Grand Labs' economic activity, and Iowa's long-standing policy interest in deterring undesirable conduct occurring within this state by imposing punitive damages in appropriate circumstances. Furthermore, Harlan Feeders argues, Grand Labs could reasonably expect to be subjected to the burdens and benefits of Iowa law, because it has its principal place of business in Iowa.

Notwithstanding these arguments, however, in the present case, the court concludes that Nebraska substantive law applies. For the limited weight the factor now receives, the place of injury was Nebraska. Nebraska was also the principal place of conduct leading to the injury, because it was there that

the parties negotiated purchase of the vaccine, where Harlan Feeders received all of the information concerning the vaccine, and where in fact Harlan Feeders administered it to its livestock. Harlan Feeders, the plaintiff, is domiciled in Nebraska, and Grand Labs admittedly does business there, but Harlan Feeders has no domiciliary contact with Iowa. The court also concludes that Nebraska is where the relationship between the parties is centered. For these reasons, the substantive law of Nebraska applies to this case, including its law prohibiting punitive damages.

This conclusion is not eroded by consideration of the policy and interests of the states from which the substantive law might be chosen. Nebraska has made a policy choice that punitive damages are inappropriate, and that interest is not outweighed by Iowa's contrary interest in imposing punitive damages as a deterrent, at least not in circumstances where the plaintiff is a resident of Nebraska, not Iowa, where the alleged injured occurred in Nebraska, not Iowa, as the result of use of a product produced by a South Dakota, not an Iowa, corporation, even when the corporation physically produced the product in Iowa. *See Enron Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 312 (8th Cir.1991) (applying Restatement (Second) of Conflict of Laws, § 171 and § 145 to determine that punitive damages were governed by the substantive law of Nebraska, in part because Nebraska's interest in prohibiting punitive damages outweighed the Virgin Islands' slight interest in imposing them). Nebraska's interest in this controversy, even apart from any interest in punitive damages being prohibited or imposed, is so much the greater, that the court has little hesitation in applying Nebraska law to the punitive damages question as well.

Grand Labs' motion to dismiss the punitive damages claim should be granted as to Harlan Feeders' claims sounding in tort, because Nebraska substantive law applies to those claims under Iowa's choice-of-law or conflict-of-laws rules. The court will next consider whether Nebraska law should also apply to any of Harlan Feeders' claims sounding in contract.

### 3. The Iowa Conflict-of-laws Rules For Contract Cases

■ Iowa courts have also adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws for determination of conflict-of-laws questions pertaining to contract actions, this time choosing the Restatement's formulation of the test found in § 188. *Smith,* 918 F.2d at 1363 n. 3 (citing *Cole v. State Auto & Casualty Underwriters,* 296 N.W.2d 779, 781 (Iowa 1980) (*en banc* )); *Modern Leasing,* 888 F.2d at 62; *Freeze,* 839 F.2d at 417 (citing *Cole,* 296 N.W.2d at 781, and *Joseph L. Wilmotte & Co. v. Rosenman Bros.,* 258 N.W.2d 317, 326 (Iowa 1977), for this proposition as to contract actions); *see also In re Marriage of Whelchel,* 476 N.W.2d 104, 109 (Iowa Ct.App. 1991) (citing *Lindstrom v. Aetna Life Ins. Co.,* 203 N.W.2d 623 (Iowa 1973), as applying this test to contract actions). That test applies both to situations in which the parties have not made a choice of law in the contract, and as part of the analysis of the conflict-of-law question when the parties have made a choice of law in the contract. *Wilmotte,* 258 N.W.2d at 328 (§ 187 of the Restatement permits parties to agree on the law to be applied to the contract so long as it does not override the public policy of a state having a materially greater interest in the transaction as determined under § 188). The "most significant relationship" test swept away the "place-of-contract theory" of the original Restatement, which had been adopted by Iowa in *Haverly v. Union Constr. Co.,* 236 Iowa 278, 18 N.W.2d 629 (1945), but which had fallen into disfavor. *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 499 (Iowa 1983) (citing *Wilmotte* as establishing the new rule); *Cole,* 296 N.W.2d at 781 ("The second Restatement recognizes widespread repudiation of the test espoused in the first Restatement.").

### a. Choice or absence of choice of law in the contract

■ Under the Iowa conflict-of-laws test for contract actions, the parties may, with certain restrictions, select for themselves the law which will apply to their contract. *Cole,*

296 N.W.2d at 781 (citing Restatement (Second) of Conflict of Laws § 187). Where the parties do not make that choice, the "most significant relationship" test of Restatement (Second) of Conflict of Laws § 188 applies, and the court applies the law of the jurisdiction with the "most significant relationship" to the transaction or dispute. *Id.* (Adding that "[w]e think it clear that choice-of-law questions are now to be determined under the Restatement (Second) test.").[6] The "most significant relationship" test of § 188 was explained in *Wilmotte*, 258 N.W.2d at 326, as follows:

Section 188 of the Restatement has reference to the "most significant relationship" rule to determine the law to be applied with respect to the rights and duties of the parties under a contract where the contract did not make an effective choice as to which state law should be applied in construing or enforcing the contract. In determining which state has the most significant relationship to the issue in question various contacts with the different states are determined. These contacts include the place of contracting, the place of negotiation of the contract, the place of performance, the locale of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business. Also, in determining any conflicts of law questions with respect to the interpretation or enforcement of contracts, the following factors must be taken into account:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

*See* Restatement, Second, Conflict of Laws, Choice of Law Principles, § 6, p. 10. *Wilmotte*, 258 N.W.2d at 326.

The court in *Wilmotte* also addressed the requirements of § 187,[7] which applies when

---

6. Section 188 of the Restatement (Second) of Conflict of Laws is as follows:

§ 188. Law Governing in Absence of Effective Choice by the Parties
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
 (a) the place of contracting,
 (b) the place of negotiation of the contract,
 (c) the place of performance,
 (d) the location of the subject matter of the contract, and
 (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

7. Section 187 of the Restatement (Second) of Conflict of Laws is as follows:

§ 187. Law of the State Chosen by the Parties
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

the parties have made a choice of law in the contract:

> Restatement Second, Conflict of Laws, § 187, permits the parties to agree on the law to be applied to the contract in most cases *so long as it does not override the public policy of a state having a materially greater interest in the transaction.*

*Id.* at 328. This language in the *Wilmotte* decision is drawn from § 187(2)(b), but this court does not read the *Wilmotte* decision as limiting the Iowa Supreme Court's acceptance of § 187 only to that subsection. The other subsections of § 187 were inapplicable to the case before the court in *Wilmotte,* because the chosen state had a substantial relationship to the parties and the transaction. *Id.* at 326–328 (New York law was chosen, rather than Iowa law, the plaintiff was from New York, and the arbitration proceedings at issue were in New York; the court concluded that New York had significant relationships as well as being the law chosen in the contract).

### b. Consideration of factors for choice of law as to contract claims

 In the present case, however, there is no assertion that there is any choice-of-law term in any contract between the parties, nor, indeed, is there any assertion that there was a written contract specifically governing their relationship at all. Rather, Harlan Feeders asserts that it purchased the "Vira Shield" vaccine after receiving various representations about its safety and effectiveness and in reliance on those representations. Thus, for these misrepresentation or breach-of-warranty claims, sounding in contract or quasi-contract, the court must apply the rules applicable when the parties do not make an effective choice of law. Hence, the court will apply the "most significant relationship" test of Restatement (Second) of Conflict of Laws § 188. *Cole,* 296 N.W.2d at 781.

Application of the factors appropriate to a contract claim leads again to the conclusion that Nebraska law applies to the issues in this case, including the substantive issue of punitive damages. Nebraska was where the parties entered into any agreement concerning the purchase and use of "Vira Shield," and thus is the place of contracting. Nebraska is also the place where all contacts between the parties took place, and thus is the place of negotiation of any contract. The product was purchased, delivered, and used in Nebraska, thus Nebraska is the place of performance and the locale of the subject matter of the contract, as the cattle treated with the vaccine were all in Nebraska at all relevant times. Finally, the factors of the domicile, residence, nationality, place of incorporation, and place of business of the parties also points to application of Nebraska law. Harlan Feeders is a Nebraska company, and Grand Labs does business there, although it is incorporated in South Dakota. Harlan Feeders has no residence or domicile in Iowa. Although Grand Labs has facilities in Iowa and does business in Iowa, Grand Labs also does business in Nebraska, including the business in question here. Nebraska law should therefore apply to an contract or quasi-contract issues.

Turning to consideration of the additional factors identified by the court in *Wilmotte,* the court comes to the same conclusion. The needs of the interstate and international systems do not require imposition of the law of Iowa, because Nebraska law is more appropriate to a cause of action by a Nebraska plaintiff for injuries suffered in Nebraska as the result of contractual relations negotiated in Nebraska. The court has already concluded that the relevant policies of the possible states weigh in favor of selection of Nebraska law. Although Harlan Feeders argues that Grand Labs could reasonably expect Iowa law to apply, because Grand Labs does busi-

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determina-

tion of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

ness here, this "reasonable expectations" factor also weighs in favor of Nebraska as the law of choice, because the Nebraska plaintiffs could reasonably have expected Nebraska law to apply to a cause of action arising for an agreement entered into in that state for delivery of a product to be used in that state. The basic policies underlying the particular field of law have been considered, and the court concluded that Nebraska's rejection of the necessity of deterrence by imposition of punitive damages should be respected. Furthermore, there is greater certainty and predictability to be derived from applying the law of Nebraska to an agreement entered into in Nebraska for purchase and use of a product in Nebraska by a Nebraska business. Finally, the court has had no difficulty in determining what law would apply to the question of punitive damages in either state.

In these circumstances, the court concludes that Nebraska law, including the law of punitive damages, should also apply to causes of action sounding in contract or quasi-contract.

### III. CONCLUSION

The court concludes that defendant Grand Labs' motion to dismiss punitive damages claims must be granted. The court recognizes that Iowa's choice-of-law or conflict-of-laws rules distinguish between "substantive" or "rights" questions, on the one hand, and "procedural" or "remedies" questions, on the other. As a threshold determination, therefore, the court concludes that punitive damages are a question of substantive law for three reasons. First, Iowa courts apply the "most significant relationship" analysis to damages questions. Second, the conflict-of-laws analysis of the Restatement (Second) of Conflict of Laws, embraced by Iowa courts, specifically states that matters of punitive damages are to be determined according to the law of the jurisdiction chosen by application of the most significant relationship test. Third, the court concludes that consideration of the "substantive/procedural" distinction establishes that the punitive damages laws of both Iowa and Nebraska were plainly substantive. Thus, the court concludes, punitive damages must be considered in this case in accordance with the substantive law of the state selected by application of Iowa's conflict-of-laws rules.

Application of those rules to both tort and contract claims yields the conclusion that Nebraska law should apply. The factors to be considered to determine the most significant relationship for both tort and contract causes of action point strongly toward application of Nebraska law, and the court has found that policy considerations do not outweigh such a conclusion. Therefore, Nebraska substantive law applies to punitive damages questions in this case. Because punitive damages claims are prohibited under the Nebraska constitution, Grand Labs is entitled to dismissal of Harlan Feeders' punitive damages claims.

**IT IS SO ORDERED.**