Melvin SMITH and Mona Smith, Appellants,

v.

GOULD, INC., Appellees.

No. 90–1126SI.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1990.

Decided Nov. 19, 1990.

Lyle Rodenburg, Council Bluffs, Iowa, for appellants.

Robert F. Rossiter, Jr., Mary K. Frank, Omaha, Neb., for appellees.

Before BOWMAN and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

MAGILL, Circuit Judge.

Melvin and Mona Smith appeal from an order of the district court[1] granting Gould, Inc.'s motion for summary judgment in an action seeking damages for breach of contract and personal injuries arising out of Mr. Smith's employment at Gould. Mrs. Smith also sought damages for loss of consortium and support. On appeal, the Smiths argue first that the Nebraska Workers' Compensation Act, which the district court held barred their intentional tort claim against Gould, violates the due process clause of the fourteenth amendment. Next, the Smiths attack the district court's determination that Mr. Smith's discharge was not wrongful, arguing that his discharge was retaliatory and therefore violated public policy because Gould's purpose in firing him was to avoid having to pay workers' compensation benefits. Finally, the Smiths argue that the district court incorrectly determined that the exclusivity provision of the Nebraska Workers' Compensation Act bars their claim under the Nebraska Factory Act. We affirm.

## I.

In 1970, Melvin Smith began working for Gould, Inc., a manufacturer of batteries, at its smelter in Omaha, Nebraska. He was hired as a maintenance worker and was covered by the union contract, which provided that employees could be fired only for cause. About eighteen months later, Mr. Smith was promoted to a supervisory position and therefore ceased to be covered by the union contract. He testified, however, that he understood at the time of the promotion that his new position was to be permanent and that he would have job security—that is, that he could be fired only for reasonable cause. In 1973, Mr. Smith accepted another promotion and was transferred to a Gould facility in Denver, Colorado, where he was in charge of buying scrap batteries and shipping them to Omaha. He was laid off from that position in March 1975, when Gould shut down its Denver battery-buying operation for economic reasons. When he asked about returning to his old job in Omaha, Gould informed him that it had a policy against transferring salaried employees back to hourly positions. Mr. Smith subsequently found employment elsewhere.

During his employment with Gould, Mr. Smith developed diabetes and began to suffer from anemia and other symptoms of lead poisoning. While working at the Omaha plant, he was treated for lead poisoning by Gould medical staff, who administered pills and intravenous drugs to remove the lead from his body by chelation. Mr. Smith contends that these drugs were not effective and that, in fact, they harmed him by causing lead to accumulate in his kidneys. After leaving Gould, Mr. Smith began to suffer from high blood pressure and heart disease. Although he has a family history predisposing him to these conditions, he believes they were hastened and aggravated by his exposure to lead at Gould. He also claims that the lead poisoning itself caused other medical problems from which he has suffered or is suffering. These include gastrointestinal ailments (nausea, vomiting, diarrhea, constipation, colic); muscle and joint pain; neurologic damage leading to sensory and motor dysfunction, headaches, personality changes, tremors, insomnia and bad dreams; psychological problems; kidney dysfunction and nephritis; damage to the adrenal and pituitary glands; lung dysfunction; hearing loss; and lead encephalopathy.[2] He is now totally disabled as a result of a heart attack in 1986 and is receiving social security benefits.

On November 17, 1987, the Smiths filed this action against Gould in Iowa state court. At Gould's request, the action was removed to the United States District Court for the Southern District of Iowa. In their amended complaint, filed September 8, 1988, the Smiths sought relief on grounds of wrongful discharge; fraud, deceit, and intentional misrepresentation; and breach of contract. Specifically, in the

---

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

2. Disease of the brain caused by lead.

wrongful discharge claim, they alleged that Gould had breached Smith's contract of employment, which required reasonable cause for discharge, and that Gould's asserted economic reasons for the discharge were pretextual, its real reason being its knowledge that Mr. Smith suffered from progressive lead poisoning. In their fraud claim, the Smiths alleged that Gould had lied to Mr. Smith about the safety of its workplace, about the consequences of lead exposure, and about his medical condition, and that as a result Mr. Smith, not realizing that he was suffering from lead poisoning, had not sought proper medical treatment. In their final claim for breach of contract, the Smiths alleged that Gould had undertaken through its medical staff to give Mr. Smith medical advice and treatment for lead poisoning and had breached that obligation by failing to inform Mr. Smith of his condition or treat it. Mrs. Smith also alleged loss of consortium and financial support as a result of Mr. Smith's injuries. Gould moved for summary judgment on the ground that Mr. Smith was an at-will employee and that his sole remedy for personal injuries resulting from his employment was under the Nebraska Workers' Compensation Act. The district court granted the motion on November 20, 1989, holding that (1) Mr. Smith's discharge was not wrongful, since he had failed to show any contractual or other restrictions on Gould's right to terminate him; and (2) the Smiths' other claims were barred because Mr. Smith's injuries were work-related and thus exclusively governed by the Workers' Compensation Act. The Smiths filed a motion for reconsideration; it was denied on December 20, 1989. The Smiths then appealed to this court.

## II.

Summary judgment is properly granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In making these determinations, the court must view the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986), and must give that party the benefit of all reasonable inferences from the facts, *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). We apply this same standard on appellate review. *McCuen v. Polk County, Iowa*, 893 F.2d 172, 173 (8th Cir.1990).

The parties agree that Nebraska law governs this action.[3]

### A. Due Process

On appeal, the Smiths argue first that the Nebraska Workers' Compensation Act (WCA) is unconstitutional because it makes workers' compensation benefits the exclusive remedy for injuries resulting from accident or occupational disease, and thus deprives the Smiths of a remedy for injuries sustained as a result of Gould's intentional conduct. They contend that the constitutional guarantee of substantive due process does not permit Nebraska to deprive them of their common-law right of action for Gould's intentional tort without providing an adequate substitute. Gould's failure to inform Mr. Smith of his illness and to provide proper medical treatment, they argue, is a new, separate injury. The WCA does not provide a reasonably just substitute remedy for this second injury comporting with due process; indeed, it provides no remedy at all. The worker gets no compensation at the time of the

---

**3.** Federal jurisdiction in the district court was based on diversity of citizenship between the parties. Since the action was tried in the district of Iowa, the trial court was bound to apply Iowa substantive law, including Iowa's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Modern Leasing, Inc. v. Falcon Mfg.*, 888 F.2d 59, 62 (8th Cir.1989). Iowa uses the most significant relationship test in contract and tort actions. *Cole v. State Auto & Casualty Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (contract); *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348–49 (Iowa 1973) (tort). As the conduct leading to the injury took place in Nebraska and the contract between the parties was formed there, Nebraska has the most significant relationship to the facts of this case.

injury, since he is unaware of it due to the employer's concealment. He will be able to claim benefits only when the employer's cover-up is discovered, if ever. Where the employer has intentionally aggravated the employee's injury and has withheld compensation for it, the Smiths argue that a remedy separate from the WCA is constitutionally required.

The Smiths did not raise this issue in their complaint, nor was it argued before the district court. As a general rule, a federal appellate court does not consider an issue not passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Having failed to raise the issue of the WCA's constitutionality below, the Smiths may not raise it here. *Cato v. Collins*, 539 F.2d 656, 662 (8th Cir.1976). Even disregarding this procedural defect, however, we find no merit in their argument. The constitutionality of workers' compensation acts was settled early this century in a series of Supreme Court decisions on the subject. *See Jeffrey Mfg. Co. v. Blagg*, 235 U.S. 571, 35 S.Ct. 167, 59 L.Ed. 364 (1915); *New York Cent. R.R. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); *Mountain Timber Co. v. Washington*, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917); *Arizona Employers' Liability Cases*, 250 U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058 (1919); *Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919). Although many of the early workers' compensation statutes contained exceptions for intentional acts of the employer, as do some today, the constitutionality of those statutes was never held to depend on the existence of such an exception, as the Smiths incorrectly argue in their brief. The Supreme Court in these early decisions did suggest some due process limits on workers' compensation statutes: in *New York Cent. R.R.*, for example, the Court considered whether the statute was arbitrary and unreasonable from the standpoint of natural justice, 243 U.S. at 202, 37 S.Ct. at 252, implied that the workers' compensation remedy must be a reasonably just substitute for the common law rights of action taken away, *id.* at 201, 37 S.Ct. at 252, and hinted that the scale of

compensation under a workers' compensation act might be subject to constitutional limits, *id.* at 205, 37 S.Ct. at 253; but a Court in this era also stressed that the citizen has no vested right in any particular rule of law, *Middleton*, 249 U.S. at 163, 39 S.Ct. at 231, that a legislature has discretion to alter the law governing employers and employees in the public interest, *New York Cent. R.R.*, 243 U.S. at 201, 37 S.Ct. at 252, and that its discretion to enact such laws under the police power is broad, *Mountain Timber*, 243 U.S. at 238, 37 S.Ct. at 265. The Court never found a workers' compensation statute that transgressed constitutional limits, nor did it identify a hypothetical statute that would do so. Today courts continue to uphold workers' compensation statutes against (now infrequent) constitutional attack. *See, e.g., King v. Williams Indus., Inc.*, 724 F.2d 240 (1st Cir.), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).

### B. Wrongful Discharge

 The Smiths next appeal the district court's rejection of their wrongful discharge claim. At the district court level, they argued that Gould had breached a contract of employment requiring reasonable cause for discharge. At his deposition, Mr. Smith testified that when he accepted Gould's offer to become a supervisor, he believed Gould was offering him "permanent" employment, with "job security"; however, he admitted that this was only an assumption on his part since Gould had made no express representations to that effect. Under Nebraska law, "permanent" employment means only a steady job of some permanence, as contrasted to a temporary job—not lifetime employment. *Johnston v. Panhandle Coop. Ass'n*, 225 Neb. 732, 408 N.W.2d 261, 266 (1987). A hiree's subjective understanding that he is to receive "job security" does not create a contract to that effect. *Id.*, 408 N.W.2d at 267. Because under Nebraska law employment is terminable at the will of either party unless the parties contract otherwise, *Stratton v. Chevrolet Motor Div., Gen. Motors Corp.*, 229 Neb. 771, 428 N.W.2d

910, 912 (1988), the district court granted summary judgment to Gould.

On appeal, the Smiths argue that the discharge of Mr. Smith violated public policy because it was in anticipation of Mr. Smith's filing a workers' compensation claim for injuries resulting from the lead poisoning Gould knew he had contracted. They allege that Gould fired him in an attempt to avoid paying the anticipated claim. Retaliatory discharges against employees for filing workers' compensation claims have been held actionable in some states, *see Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793 (N.D.1987), even where the employee had not yet filed a claim at the time he or she was fired, *see Richardson v. Illinois Bell Tel. Co.*, 156 Ill.App.3d 1006, 109 Ill. Dec. 513, 510 N.E.2d 134 (1987); *Wright v. Fiber Indus., Inc.*, 60 N.C.App. 486, 299 S.E.2d 284 (1983); however, Nebraska is not one of those states. In Nebraska, the public policy exception to the employment at will doctrine is very limited. It has been held to apply where the employer discharges the employee for reporting, in good faith and upon reasonable cause, suspected criminal behavior by the employer, *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988) (discharge for reporting employer's suspected violation of odometer tampering statute), and where the employer discharges the employee for a reason that is prohibited by a specific state statute, *Ambroz v. Cornhusker Square, Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987) (discharge for refusing to take a lie detector test). The case at hand fits neither of these situations. Although there is considerable merit to the Smiths' argument if their allegations are true, we are not at liberty to change state law.

4. Section 48–403 provides:

If in any of the aforesaid places any process is carried on by which dust or fumes are caused, which may be inhaled by the persons employed therein, or if the air shall become exhausted or impure, there shall be provided a fan or other such mechanical devices as will substantially carry away all such dust or

### C. Factory Act

Finally, the Smiths argue that even if they have no common-law intentional tort action, they have a cause of action under the Nebraska Factory Act, Neb.Rev.Stat. §§ 48–403, 48–422 (1988). They allege that Gould violated § 48–403 by failing to clear the air of toxic dust and fumes in its Omaha plant.[4] Section 48–422 gives a private right of action to persons harmed by a violation of the Factory Act.[5]

Although the Smiths did not include a Factory Act claim in their complaint, we will consider their claim on appeal because it was addressed by the district court. The district court correctly held that the Smiths' cause of action under the Factory Act was precluded by the WCA. The exclusivity provision of the WCA reads as follows: "If any employee ... files any claim with, or accepts any payment from [his or her] employer, or from any insurance company carrying such risk, on account of personal injury ... or submits any question to the Nebraska Workers' Compensation Court under such act, *such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury.*" Neb.Rev.Stat. § 48–148 (1988) (emphasis added). The Smiths emphasize the language "files any claim ... or accepts any payment" and argue that because Mr. Smith has filed no workers' compensation claim for his injuries, he has preserved his right to bring suit under the Factory Act.

The Smiths' interpretation of the statute is plausible on its face, but Nebraska case law holds otherwise. In *Navracel v. Cudahy Packing Co.*, 109 Neb. 506, 191 N.W. 659 (1922), the court held that the plaintiff, who was covered by the WCA but had made no claim under it, had no cause of action under the Factory Act. The WCA at the time of *Navracel* was elective; in

fumes or other impurities, subject to the approval of the Department of Labor.

5. Section 48–422 provides:

Every person operating a plant where machinery is used who shall violate any of the provisions of sections 48–401 to 48–424 shall be liable in damages to any persons injured, as a result thereof....

**1366**

*Edelman v. Ralph Printing & Lithographing, Inc.*, 189 Neb. 763, 205 N.W.2d 340 (1973), decided after the Nebraska legislature had made the WCA compulsory for most employees, the Nebraska Supreme Court held that the WCA preempts a covered employee's Factory Act claim when the employee has no choice in the matter as well as when he or she has elected to be covered. The operative fact is coverage under the WCA, not election to file a claim under it. *Abbott v. Gould, Inc.*, 232 Neb. 907, 443 N.W.2d 591, 594 (1989); *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303, 306 (1975). "If coverage exists, even though for some reason compensation may not be payable, the [Workers'] Compensation Act is exclusive." *Marlow*, 228 N.W.2d at 306; *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243, 246 (1986).

Finally, we note that the Nebraska statute of limitations, which is four years for both tort and contract actions, has long since run. Neb.Rev.Stat. §§ 25–206 to –207 (1988).

### III.

For the reasons given, we affirm the decision of the district court granting summary judgment to Gould, Inc.