Blaise RIGGS, Linden Snyder, Van Harpold, Wendell Domina, and Jerry Soule, Plaintiffs,

v.

COUNTY OF BANNER, et al., Defendants.

Nos. 7:98CV5036 to 7:98CV5040.

United States District Court, D. Nebraska.

Aug. 24, 2001.

See also 235 F.3d 1091.

Plaintiffs' Counsel: Henry F. Bailey, Jr., Bailey, Stock Law Firm, Cheyenne, WY, Kay A. Nehring, Nehring Law Firm, Alpine, TX.

Defense Counsel: Robert M. Brenner, Gering, NE, Richard L. Boucher, Kimberly L. Sturzenegger, Boucher Law Firm, Lincoln, NE.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the defendants' motions for summary judgment[1] regarding the plaintiffs' remaining claims.[2] Upon careful consideration of the pleadings, evidence,[3] and briefs submitted by the parties, I conclude that summary judgment should be granted in Case Nos. 7:98CV5037 (plaintiff Linden Snyder), 7:98CV5038 (plaintiff Van Harpold), 7:98CV5039 (plaintiff Wendell Domina), and 7:98CV5040 (plaintiff Jerry Soule), and should be granted in part and denied in part in Case No. 7:98CV5036 (plaintiff Blaise Riggs).

## I. BACKGROUND

The plaintiffs are current and former employees of Banner County, Nebraska (County): Blaise Riggs (Riggs) was employed as a road equipment operator from May 1995 until February 11, 1998, when his employment was terminated; Linden Snyder (Snyder) has been employed as a road equipment operator since August 1986; Van Harpold (Harpold) has been employed as a road equipment operator since February 1984; Jerry Soule (Soule) has been employed as a road equipment operator since February 1983; and Wendell Domina (Domina) was a shop foreman from January 1983 until his resignation in March 1999.

The defendants in each action are the County, three county commissioners, George Van Pelt (Van Pelt), Klayton Johnson (Johnson), and Dale Shaul (Shaul), and the plaintiffs' former supervisor, Charles Person (Person). Person served as superintendent of the County's road and weed department from 1980 until his retirement on December 31, 1997.

---

1. Filing 57 in Case No. 7:98CV5036; filing 62 in Case No. 7:98CV5037; filing 62 in Case No. 7:98CV5038; filing 61 in Case No. 7:98CV5039; and filing 65 in Case No.7:98CV5040.

2. In each case, the plaintiff has alleged that the defendant Banner County is guilty of reverse sex discrimination, in violation of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e–17, based on disparate treatment (count I) and a hostile work environment (count II). The plaintiff Blaise Riggs additionally has alleged a Title VII retaliation claim against Banner County (count III), and, as against all defendants, a section 1983 first amendment claim (count IV), a state-law claim for wrongful discharge (count VI), and a state-law claim for intentional infliction of emotional distress (count VII). The court previously dismissed all other claims. *See* Memorandum and Order entered April 5, 2001 (filing 56 in Case No. 7:98CV5036; filing 61 in Case No. 7:98CV5037; filing 61 in Case No. 7:98CV5038; filing 60 in Case No. 7:98CV5039; and filing 64 in Case No.7:98CV5040).

3. Evidentiary materials attached to the plaintiff's brief but not filed with the clerk of the court have not been considered. *See* NELR 7.1(b)(2).

The plaintiffs' claims concern events which occurred after June 1996, when a female county employee, Lynette Schleicher (Schleicher), who worked as a secretary for the road and week department, was transferred from the courthouse to the shop building. The plaintiffs contend that Schleicher received preferential treatment and that they meanwhile were subjected to a hostile work environment. The plaintiff Riggs also contends that he was fired by the county commissioners for reporting that he had witnessed Schleicher performing oral sex on the defendant Person on January 15, 1998, in the shop building office, and because he was prepared to report to authorities that the county commissioners had received supplies and services from the road and weed department without payment.

## II. DISCUSSION

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir.1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than

mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### I.

### Title VII, Gender–Based Disparate Treatment (Count I of all Amended Complaints)

 The plaintiffs, all of whom are males, allege that they were discriminated against by their employer, Banner County,[4] because Lynette Schleicher, a female

---

4. All of the plaintiffs' Title VII claims were

ordered dismissed as against the other four

employee, received preferential treatment. In particular, it is alleged that she was treated more favorably than the plaintiffs by "being paid for 40 hours per week of work for a job that took approximately 20 hours a week to do, receiving raises from the county commissioners on a more frequent basis than male employees who had been employed by the road department for a longer time period than she had, receiving larger raises from the county commissioners than other employees who had been employed by the road department for a longer time period than she had, being allowed to switch her days off, being given comp time, being allowed to discipline other male road department employees when she had no authority to do so, having her car filled with gas by her supervisor, Charles Person, from the county gas tank without paying for the gas, making and receiving personal phone calls on the job, engaging in art work unrelated to her employment while on the job, playing cribbage during work time, and being frequently taken to lunch, to town, and out in the country during work hours by her supervisor, when these were not part of her job duties." (Amended complaint,[5] ¶ 21) The plaintiffs allege that they suspected Schleicher of engaging in sexual relations with the defendants Person and Johnson. (Amended complaint, ¶¶ 22–24)

Even if the plaintiffs' allegations are true, sexual favoritism has been held by a clear majority of courts not to constitute actionable discrimination under Title VII. *See, e.g., Womack v. Runyon,* 147 F.3d 1298, 1300 (11th Cir.1998) (Title VII does not encompass a claim based on favoritism shown to a supervisor's paramour); *Taken*

*v. Oklahoma Corp. Com'n,* 125 F.3d 1366, 1370 (10th Cir.1997) ("Favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification."); *Becerra v. Dalton,* 94 F.3d 145, 149–50 (4th Cir.1996) (no sexual discrimination under Title VII even if supervisor granted plaintiff's coworker job benefits in exchange for sexual favors from coworker); *DeCintio v. Westchester County Medical Center,* 807 F.2d 304, 306–07 (2nd Cir.1986) ("The proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations."); *Thomson v. Olson,* 866 F.Supp. 1267, 1272 (D.N.D.1994) (preferential treatment on the basis of a consensual relationship between a supervisor and an employee is not a cognizable sex discrimination claim under Title VII), *aff'd,* 56 F.3d 69, 1995 WL 296399 (8th Cir.1995) (Table). *See also Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2,* 197 F.3d 922, 926–27 (8th Cir.1999) (citing with approval *DeCintio* and *Taken,* in holding that district court did not err in refusing to permit discovery in Title VII action regarding voluntary romantic or sexual relationships). The Equal Employment Opportunity Commission has also taken this position. *See* EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, EEOC Notice No. 915–048, at 2 (Jan. 12, 1990) ("An isolated instance of favoritism toward a 'paramour' (or spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than

---

defendants, Van Pelt, Johnson, Shaul, and Person, sued both individually and officially. *See* Memorandum and Order entered December 16, 1999 (filing 36 in Case No. 7:98CV5036; filing 38 in Case No. 7:98CV5037; filing 38 in Case No. 7:98CV5038; filing 37 in Case No.

7:98CV5039; and filing 38 in Case No.7:98CV5040).

5. Filing 13 in Case Nos. 7:98CV5036, 7:98CV5037, 7:98CV5038, and 7:98CV5039; filing 16 in Case No. 7:98CV5040.

their 'genders."). *But cf.* 29 CFR § 1604.11(g) ("Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit.")

▇ The plaintiffs have not presented any direct evidence [6] that they were discriminated against with respect to their compensation, terms, conditions, or privileges of employment because they were male. *See* 42 U.S.C. § 2000e–2(a)(1) (defining unlawful employer practices). Their evidence concerning Schleicher's alleged relationships with Person and Johnson does not create an inference that the defendants were motivated to discriminate against male employees, and is irrelevant to the plaintiffs' Title VII claims. *See Miscellaneous Docket Matter # 1, supra.*

▇ In the absence of any direct evidence of discrimination, the plaintiffs' claims are analyzed under the three-stage, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the first stage of the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of discrimination by showing that he or she: (1) is a member of a protected class; (2) was qualified to perform the job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated persons of the opposite sex. *See LaCroix v. Sears, Roebuck, and Co.,* 240 F.3d 688, 693 (8th Cir.2001). In reverse discrimination cases, the first element is modified to require proof "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir.1997) (quoting *Notari v. Denver Water Dep't,* 971 F.2d 585, 590 (10th Cir.1992)) (internal quotations and citations omitted), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998).

I find no evidence of any "background circumstances" that Banner County tends to discriminate against males. In fact, Schleicher was the only female among the nine employees in the road and weed department during the period in question, and both supervisors in the department (Person, the weed superintendent, and Bob Smith, the road foreman) and all members of the county board (comprised of Van Pelt, Johnson, and Shaul) were male.

**6.** "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus." *Kells v. Sinclair Buick GMC Truck, Inc.,* 210 F.3d 827, 835 (8th Cir.2000). Stated somewhat differently, it is "evidence of conduct or statements by persons involved in the decisionmaking process that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision." *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1017 (8th Cir.1999). *See also Cronquist v. City of Minneapolis,* 237 F.3d 920, 925 (8th Cir.2001) (stating that direct evidence must be "sufficient to permit the factfinder to infer that [the alleged discriminatory] attitude was more likely than not a motivating factor in the employer's decision"). Thus, in the context of a "mixed motives" analysis under *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), "direct evidence" is not used in its hornbook sense. "[T]here is no restriction on the type of evidence a plaintiff may produce to demonstrate that an illegitimate criterion was a motivating factor in the challenged employment decision. The plaintiff need only present evidence, be it direct or circumstantial, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision." *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 n. 1 (8th Cir.1993).

■ Even if the allegedly preferential treatment that Schleicher received from the weed superintendent and the county commissioners could be attributed to sexism under these circumstances, it has not been demonstrated that she was "similarly situated to the plaintiff[s] in all relevant respects." *Britton v. City of Poplar Bluff, Mo.,* 244 F.3d 994, 998 (8th Cir.2001). "The test for whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *Palesch v. Missouri Com'n on Human Rights,* 233 F.3d 560, 568 (8th Cir.2000) (citing *Harvey v. Anheuser Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994)).

With particular regard to the plaintiffs' allegations that Schleicher received more frequent and larger pay increases, I find no basis for a meaningful comparison. The evidence establishes that Schleicher was a part-time secretary whose office duties were entirely different from those of the plaintiffs, who were responsible for operating and maintaining the County's road equipment. The evidence also shows that Schleicher earned substantially less than each of the plaintiffs, even after she received a $1 per hour raise in January 1997.

■ "A successful gender-based wage discrimination claim under Title VII requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (Equal Pay Act); *see also EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 669 (8th Cir.1992) (holding that same standard applies to Equal Pay Act and Title VII wage-discrimination claims)." *Sowell v. Alumina Ceramics, Inc.,* 251 F.3d 678, 683 (8th Cir.2001). Because the plaintiffs have failed to show any such equivalency between their jobs and Schleicher's job, they cannot succeed on their claims that Banner County unlawfully discriminated by failing to grant uniform pay raises.[7]

■ With regard to the plaintiffs' other complaints about Schleicher's privileges, the evidence is also deficient in failing to demonstrate that the plaintiffs suffered adverse employment actions as a result. "Adverse employment actions must have a 'materially adverse impact' on the plaintiff's terms or conditions of employment under Title VII." *Sowell,* 251 F.3d at 684 (quoting *Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1245 (8th Cir.1998)). "Not everything that makes an employee unhappy is an actionable adverse employment action. Rather, an adverse employment action is exhibited by a mate-

---

7. In determining that the plaintiffs have failed to demonstrate that Schleicher was similarly situated to them in all material respects, I have not considered whether the raises that Schleicher received were justified, or whether there was a legitimate reason that the plaintiffs did not receive raises at the same time or for the same amount. *See Davenport v. Riverview Gardens School Dist.,* 30 F.3d 940, 944 (8th Cir.1994) (holding that district court erred where it "essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action—in other words, to prove pretext and the ultimate issue of intentional discrimination."). *See also Johnson v. Arkansas State Police,* 10 F.3d 547, 551 (8th Cir.1993) (threshold of proof necessary to make a prima facie case is minimal and district court improperly conflated prima facie case with ultimate issue); *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 & n. 3 (8th Cir.1994) (cautioning that "the meaning of 'similarly situated' varies according to the context in which it is used," and that "the district court must not conflate the prima facie case with the ultimate issue of discrimination.").

rial employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix*, 240 F.3d at 691 (citations omitted). It may be that Schleicher was abusing her employment privileges, but this does not provide the basis for a Title VII claim by her co-workers.

## II.

### Title VII, Hostile Work Environment (Count II of all Amended Complaints)

"To succeed in a hostile-work-environment claim the plaintiffs must show: (1) that they belong to a protected group; (2) that they were subject to unwelcome harassment; (3) a causal nexus between the harassment and their membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) (in cases where the harasser is not the plaintiffs' supervisor) that the defendant knew or should have known of the harassment and failed to take proper remedial action." *Dowd v. United Steelworkers of America, Local No. 286*, 253 F.3d 1093, 1101 (8th Cir.2001). Once again, the plaintiffs' proof is wholly inadequate.

"The type of conduct that may constitute sexual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1377 (8th Cir.1996) (citing 29 C.F.R. § 1604.11(a)). The plaintiffs have not shown that they were subjected to any such conduct. The only evident hostility in the plaintiffs' workplace was that which was engendered by their suspicions that Schleicher received pay raises and other employment advantages by engaging in consensual sexual relationships with her supervisor and one of the county commissioners. "Title VII does not, however, create a cause of action for all unpleasant or abusive behavior in the

workplace." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir.1997).

## III.

### Title VII, Retaliation (Count III of Riggs' Amended Complaint)

"To establish a prima facie case of Title VII retaliation, [the plaintiff] must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action." *Sowell*, 251 F.3d at 684 (quoting *Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir.2000)). The plaintiff Riggs' retaliation claim is missing proof of the first element.

Riggs alleges that he was terminated for telling others that he had observed Schleicher and Person engaged in a sex act in the shop office on January 15, 1998, approximately two weeks after Person's retirement. "Title VII prohibits employers from retaliating against employees for engaging in two broad categories of protected activity: 1) opposing any discrimination made unlawful by Title VII or 2) making a charge or participating in any manner in an investigation or proceeding under Title VII." *Bogren*, 236 F.3d at 407–08 (citing See 42 U.S.C. § 2000e–3(a)). Riggs' activities did not fall within either of these two categories, and, consequently, were not entitled to statutory protection.

## IV

### Section 1983, First Amendment (Count IV of Riggs' Amended Complaint)

Rigg's actions in reporting the January 15, 1998 incident may be protected under the First Amendment, however. The Eighth Circuit has determined that his statements touched upon a matter of

public concern because they "provided an explanation for previous complaints made during Mr. Person's tenure that working hours (and thus tax dollars) were being used for non-work activities." *Domina v. Van Pelt*, 235 F.3d 1091, 1097 (8th Cir. 2000). The Eighth Circuit also held, in ruling on the issue of qualified immunity, that there are factual disputes regarding the impact of Riggs' protected speech, such that it could not be determined as a matter of law that Riggs' interest in the speech was outweighed by the County's interest in functioning effectively. *Id.*, at 1098–99 (applying balancing test of *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

 The defendants now argue that there was no causal connection between Riggs' protected speech and his termination, and thus he cannot establish a prima facie case of retaliation.[8] This argu-

ment is without merit. The evidence shows that Riggs was suspended soon after he and others reported the incident to the defendant Van Pelt on January 19, 1998, and that he was discharged after the county attorney completed an investigation into the report.[9] The stated reason for the termination was that the manner in which Riggs reported the incident "was inappropriate and careless" and had "caused irreparable harm." The termination letter, which was prepared by the county attorney, also states that the county board discussed "that the facts gathered by the investigation were inconclusive regarding the truth of the allegations made by you involving Lynette Schleicher and Charlie Person." (Filing 26, exhibit 7) This constitutes direct evidence that Riggs' report of the January 15, 1998 incident played a part in his termination. Consequently, the burden is upon the defendants to show by a preponderance of the evidence that they

**8.** "In order to establish a claim for unlawful First Amendment retaliation under 42 U.S.C. § 1983, a public employee must show that in addition to participation in a protected activity, he or she suffered an adverse employment action and that there was a causal connection between the protected activity and the adverse employment action." *Bechtel v. City of Belton, Mo.*, 250 F.3d 1157, 1162 (8th Cir. 2001).

**9.** The Court of Appeals has summarized the applicable facts as follows:

While Blaise Riggs was a member of the Banner County, Nebraska, road crew, he observed Charles Person, who had recently retired as the county road superintendent, and the road department secretary in an office during the noon hour engaged in what appeared to be a sexual act. On the same day, Mr. Riggs reported the incident to his supervisor [Bob Smith, the road foreman]. The next day, the other four plaintiffs, who were also road crew members, overheard Mr. Riggs and his supervisor discussing the incident. On the following work day, the supervisor directed Mr. Riggs to tell the entire road crew about the incident. The supervisor then

asked Mr. Riggs and the other road crew members to accompany him to the home of defendant George Van Pelt, a county commissioner, and to apprise Mr. Van Pelt of the incident. Mr. Van Pelt subsequently contacted defendants Klayton Johnson and Dale Shaul, two other county commissioners.

Mr. Riggs and the secretary were placed on paid leave pending the completion of an investigation. The county attorney characterized the results of the investigation as "inconclusive," partly because Mr. Person and the secretary denied engaging in the sexual conduct. Mr. Riggs was eventually fired, . . . .

Following a hearing regarding Mr. Riggs's discharge, the county offered to reinstate him to his position on the road crew. He was told, however, that he would not be promoted to a supervisory position that he had been scheduled to assume. Mr. Riggs declined the county's offer. The commissioners stated that they denied Mr. Riggs the supervisory position because of the way in which he reported the relevant incident, including having told his co-workers what he had observed, and because he later said that he was uncomfortable approaching two of the commissioners [Johnson and Shaul].

would have taken the same action absent Riggs' protected conduct. *See Cox v. Dardanelle Public School Dist.*, 790 F.2d 668, 672 (8th Cir.1986) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

The defendants contend that Riggs violated the County's personnel policy by discussing the matter with his co-workers before reporting it to the county board, and that such violation justified his discharge. They, however, have not produced any evidence to show that such a policy actually existed. Indeed, after conducting a grievance hearing, the county board offered to reinstate Riggs to his former position.

The defendants further contend that Riggs was terminated because he told the board that he had not felt comfortable approaching two of the county commissioners (Van Pelt and Shaul) to report the incident.[10] This factor was not expressly mentioned in the termination letter, and there is a dispute as to what was actually said by Riggs. In particular, there is a dispute as to whether Riggs implied that he was unable to work with the board.

■ I conclude that the defendants have not established as a matter of law that the decision to terminate Riggs would have been made regardless of his allegations against Schleicher and Person. To the extent that Riggs' section 1983 claim might be subject to a "pretext" analysis

rather than to a "mixed motives" analysis,[11] I also find that there are genuine issues of material fact as to whether the reasons that have been articulated by the defendants for the adverse employment action are legitimate and non-pretextual. The defendants' motion for summary judgment will therefore be denied with respect to count IV of Rigg's amended complaint.

## V.

### Wrongful Discharge (Count VI of Riggs' Amended Complaint)

■ Riggs also asserts a state-law claim for wrongful discharge, alleging that the county board's decision to terminate his employment contravened public policy "as expressed in Neb.Rev.Stat. § 48–1114, and in the common law, that individuals shall not be discriminated against in their employment on the basis of their sex, or based upon the fact that they have made or might make a report of unlawful conduct or had made it clear that they would not tolerate unlawful conduct." (Filing 16, ¶ 69) To the extent that the plaintiff is attempting to assert a claim under § 48–1114 of the Nebraska Fair Employment Practice Act (NFEPA) for sex discrimination, or for retaliatory conduct related to his reporting of the January 15, 1998 incident, his state-law claim fails for the same reasons as his Title VII claims for discrimination and retaliation (counts I and III of Riggs' amended complaint). The NFEPA

---

*Domina*, 235 F.3d at 1095.

**10.** Riggs' statement to the board is also cited as being a factor in the defendants' decision to withdraw Riggs' appointment to succeed Person as weed superintendent.

**11.** *See, e.g., Graning v. Sherburne County,* 172 F.3d 611, 615 & n. 3 (8th Cir.1999) (discussing applicability of *McDonnell Douglas* or *Mt. Healthy* to first amendment retaliation claim). For example, a "pretext" analysis may be appropriate with respect to Riggs' allegations

that the county board terminated him because he had recently accused the commissioners, in collusion with Person and Schleicher, of engaging in theft of services and supplies from the County. These accusations, however, have not been identified by the plaintiff as forming a part of his first amendment claim. (See amended complaint, filing 16, ¶ 61, which specifically identifies the matter of public concern as pertaining to Riggs' report of Schleicher and Person engaging in sex in the county shop office.)

is patterned after Title VII, and Nebraska courts look to federal decisions when construing the Act. *See Father Flanagan's Boys' Home v. Agnew,* 256 Neb. 394, 401, 590 N.W.2d 688, 693 (1999); *City of Fort Calhoun v. Collins,* 243 Neb. 528, 532, 500 N.W.2d 822, 825 (1993); *Airport Inn v. Nebraska Equal Opportunity Comm.,* 217 Neb. 852, 856, 353 N.W.2d 727, 731 (1984); *Malone v. Eaton Corp.,* 187 F.3d 960, 962 n. 3 (8th Cir.1999).

Riggs specifically alleges, however, that the county commissioners also voted to discharge him because they "were aware that Riggs knew, and was preparing to report to authorities, that the law had been violated by Schleicher, Person, Shaul, Van Pelt, and Johnson, by them conspiring to allow Commissioners Shaul, Van Pelt, and Johnson to receive services provided by the county weed department without paying for them, and falsifying county records to cover up the same, . . . ." (Filing 16, ¶ 70) This allegation is unrelated to any Title VII claim, and requires additional analysis.

Neb.Rev.Stat. Ann. § 48–1114 (Michie 1995) provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because [the employee] . . . (3) has opposed any practice or

refused to carry out any action unlawful under federal law or the laws of this state."[12] Theft of property and services is, of course, an unlawful activity under Nebraska law. *See* Neb.Rev.Stat. Ann. §§ 28–511 and 28–515 (Michie 1995).

The defendants have failed to address the alleged violation of § 48–1114, but instead argue that Riggs, as a county employee, was not protected by the "whistleblowing" safeguards of the State Government Effectiveness Act, Neb.Rev. Stat. Ann. §§ 81–2701 to 81–2710 (Lexis 1999). This argument misapprehends the true nature of the plaintiff's claim, which is based upon an alleged public policy exception to the employment-at-will doctrine.[13]

Because Banner County is subject to the provisions of the NFEPA,[14] *see* Neb.Rev. Stat. Ann. § 48–1102(2) (Michie 1995) (defining "employer" to include political subdivisions), it is expressly prohibited by statute from retaliating against an employee for opposing or refusing to carry out an unlawful activity. The County, however, is not subject to suit under Neb.Rev.Stat. Ann. § 20–148 (Lexis 1999)[15] for the alleged violation of § 48–1114. While a complainant may also file suit under § 48–1119(4) of the NFEPA, this must be done

---

12. "Unlawful under federal law or the laws of this state" is defined as "acting contrary to or in defiance of the law or disobeying or disregarding the law." Neb.Rev.Stat. Ann. § 48–1102(15) (Michie 1995).

13. The evidence indicates that Riggs was, in fact, an "at-will" employee. See Employee Handbook for Banner County (filing 58, exhibit 114, p. 15).

14. The court has previously ruled that the County during 1997 satisfied the 15–employee requirement for an "employer" under Title VII, 42 U.S.C. § 2000e(b). *See* Memorandum and Order entered December 16, 1999 (filing 36, Case No. 7:98CV5036).

15. Section 20–148 provides in part: "(1) Any person . . ., *except a political subdivision,* who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person." (Emphasis supplied.) This procedural statute has been construed by the Nebraska Supreme Court to allow a claimant to bring a private cause of action for violations of the NFEPA without exhausting administrative remedies. *See Goolsby v. Anderson,* 250 Neb. 306, 313, 549 N.W.2d 153, 157–58 (1996).

prior to dismissal of a discrimination charge by the Nebraska Equal Opportunity Commission. *See Lampman v. McCook Public Schools,* 54 F.Supp.2d 945, 946 (D.Neb.1999). Riggs does not purport to be proceeding under either § 20–148 or § 48–1119(4), but instead is resorting to a common law remedy.

As recognized by the Eighth Circuit in *Smith v. Gould, Inc.,* 918 F.2d 1361, 1365 (8th Cir.1990), a limited public policy exception to the employment at-will doctrine has been applied by the Nebraska Supreme Court "where the employer discharges the employee for reporting, in good faith and upon reasonable cause, suspected criminal behavior by the employer, *Schriner v. Meginnis Ford Co.,* 228 Neb. 85, 421 N.W.2d 755 (1988) (discharge for reporting employer's suspected violation of odometer tampering statute), and where the employer discharges the employee for a reason that is prohibited by a specific state statute, *Ambroz v. Cornhusker Square, Ltd.,* 226 Neb. 899, 416 N.W.2d 510 (1987) (discharge for refusing to take a lie detector test)." A panel of the Nebras-

ka Court of Appeals, relying upon *Schriner* and *Ambroz,* has since declared that "the law in Nebraska is that an at-will employee has a cause of action for wrongful discharge against his or her former employer if the employee was discharged in violation of a contractual right or a statutory restriction or when the motivation for the discharge contravenes public policy." *Simonsen v. Hendricks Sodding & Landscaping, Inc.,* 5 Neb.App. 263, 269, 558 N.W.2d 825, 829 (1997).[16]

Riggs' wrongful discharge action is within the scope of Nebraska's public policy exception as described by the Eighth Circuit in *Smith* and as applied by the Nebraska Court of Appeals in *Simonsen.* Such an action, though, will only lie against the County. *See, e.g., Arthur v. Armco, Inc.,* 122 F.Supp.2d 876, 880 (S.D.Ohio 2000) (dismissing claims against plaintiff's supervisors because "the [Ohio] caselaw recognizing common law claims for wrongful discharge in violation of public policy speaks solely in terms of the liability of an 'employer.'").

---

**16.** The plaintiff in *Simonsen* claimed that he was fired because he refused to drive a truck with defective brakes (a misdemeanor offense under a Nebraska statute adopting portions of federal motor carrier safety regulations). In holding that such a discharge from employment would violate public policy, the Court of Appeals panel relied upon § 48–1114, even though the defendant was not shown to be an "employer" for purposes of the NFEPA, reasoning that the statute "support[s] the rather obvious conclusion that it is against the public policy of this state for employers to require employees to violate the law in order to remain employed." *Id.* at 270, 558 N.W.2d at 830. Ten months after *Simonsen* was decided, another panel of the Court of Appeals (including two out of three members of the *Simonsen* panel), ruled in an opinion not designated for permanent publication, *Andersen v. American Red Cross,* 1997 WL 627610 (Neb. App. Oct. 10, 1997), that a discharged employee could not maintain a common law

action for wrongful discharge based on a statement of public policy in the NFEPA, but that he could amend his pleadings to bring the action pursuant to § 20–148 for the alleged violation of the Act (*i.e.,* retaliatory discharge for reporting the Red Cross to the FDA for improper blood platelet storage). The Court's *Simonsen* decision was not discussed. While the *Andersen* decision is not precedent, *see* Rule 2(E)(4) of the Rules of Practice and Procedure in the Nebraska Supreme Court and Court of Appeals, it does cast some doubt upon the *Simonsen* panel's broad statement that an at-will employee has a cause of action where the employer's motivation for the discharge contravenes public policy. *See also Blair v. Physicians Mut. Ins. Co.,* 242 Neb. 652, 658–59, 496 N.W.2d 483, 487 (1993) (declining to adopt general public policy exception). As applied, however, the public policy exception that was recognized in *Simonsen* is consistent with *Schriner* and *Ambroz.*

As against the County, I find that there are genuine issues of material fact concerning Riggs' claim that he was discharged because voiced opposition to, and was preparing to report to authorities, the alleged theft activities. In all other respects, his claim fails as a matter of law.

## VI.

### Intentional Infliction of Emotional Distress (Count VII of Riggs' Amended Complaint)

■ Finally, Riggs asserts a state-law claim for intentional infliction of emotional distress related to his termination. To recover on this tort claim, Riggs must prove: "(1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it." *Brandon v. County of Richardson*, 261 Neb. 636, 656, 624 N.W.2d 604, 620–21 (2001).

■ "Regarding the second element of the tort, it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery or whether it is necessarily so. Only if reasonable minds may differ does the fact finder then determine whether the conduct in a particular case is sufficiently extreme and outrageous to result in liability." *Id.* at 657, 624 N.W.2d at 621 (citations omitted).

■ "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case. In determining whether certain conduct is extreme and outrageous, the relationship between the parties and the susceptibility of the plaintiff to emotional distress are important factors to consider. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society do not rise to the level of extreme and outrageous conduct." *Id.* (citations omitted).

■ The defendants' conduct toward Riggs is not shown to have been extreme and outrageous. Even if it could be so viewed, there is no probative evidence that Riggs suffered severe emotional distress as a result.

■ "Liability arises for intentional infliction of emotional distress only when emotional distress has in fact resulted and is severe. Whether severe emotional distress can be found is a question of law; whether it existed in a particular case is a question of fact. Although outrageous conduct and severe emotional distress are separate elements of the tort of intentional infliction of emotional distress, the two are related. The extreme and outrageous character of the conduct is itself important evidence that severe emotional distress existed on account of the conduct." *Id.* at 662–63, 624 N.W.2d at 624.

■ "Furthermore, the emotional anguish or mental harm must be *medically diagnosable* and must be of sufficient severity that it is *medically significant*." *Sell v. Mary Lanning Memorial Hosp. Ass'n*, 243 Neb. 266, 271, 498 N.W.2d 522, 525 (1993) (emphasis in original). "Where the character of an alleged injury is not objective, the cause and extent of the injury must be established by expert medical testimony." *Turek v. Saint Elizabeth Community Health Center*, 241 Neb. 467, 475, 488 N.W.2d 567, 573 (1992).

The evidence shows that Riggs has not received any medical treatment for his alleged mental anguish and emotional distress. During his deposition, when specifi-

cally asked about this claim, Riggs could only testify that he had an "icky feeling" about being fired, and that he "feel[s] a little nervous every time it's mentioned." (Filing 58, exhibit 10, pp. 195:1–196:8). This is not satisfactory proof either as to the causation or the severity of the alleged emotional distress.

## CONCLUSION

I find that the plaintiffs are unable to establish a prima facie case of sex discrimination, sexual harassment, or retaliation under Title VII, and that summary judgment should be entered against the plaintiffs on such claims. I also find that summary judgment should be entered against Riggs on his state-law claim for intentional infliction of emotional distress, and, with the exception of the County, on his state-law claim for wrongful discharge. The defendants' motion for summary judgment will be denied, however, with respect to Riggs' § 1983 first amendment claim. Regarding Riggs' state-law claim for wrongful discharge, the County's motion for summary judgment will be denied insofar as Riggs alleges that he was terminated for opposing and preparing to report alleged theft activities, but in all other respects the motion will be granted.

Consequently, the actions filed by the plaintiffs Linden Snyder, Van Harpold, Wendell Domina, and Jerry Soule will be dismissed as against all defendants. The action filed by the plaintiff Blaise Riggs will be dismissed in its entirety as against the individual defendants, George Van Pelt, Klayton Johnson, Dale Shaul, and Charles Person, and, as against the defendant Banner County, will be dismissed on all claims except counts IV (first amendment claim) and VI (common law wrongful discharge claim). Count VI will be limited, however, to a claim that the County wrongfully discharged Riggs for opposing and preparing to report theft activities.

Finally, in the action filed by Riggs (Case No. 7:98CV5036), I find that there is no just reason for delay in entering a final judgment on the dismissed claims. Such claims involve common questions of law and fact with respect to claims that were alleged in the other actions, and any appeals from this order should be consolidated. Pursuant to Fed.R.Civ.P. 54(b), I therefore will direct that a final judgment be entered on the dismissed claims in such action.

Accordingly,

IT IS ORDERED:

1) In Case No. 7:98CV5037 (plaintiff Linden Snyder), the defendants' motion for summary judgment (filing 62) is granted, and the plaintiff's action is dismissed with prejudice.

2) In Case No. 7:98CV5038 (plaintiff Van Harpold), the defendants' motion for summary judgment (filing 62) is granted, and the plaintiff's action is dismissed with prejudice.

3) In Case No. 7:98CV5039 (plaintiff Wendell Domina), the defendants' motion for summary judgment (filing 61) is granted, and the plaintiff's action is dismissed with prejudice.

4) In Case No. 7:98CV5040 (plaintiff Jerry Soule), the defendants' motion for summary judgment (filing 65) is granted, and the plaintiff's action is dismissed with prejudice.

5) In Case No. 7:98CV5036 (plaintiff Blaise Riggs), the defendants' motion for summary judgment (filing 57) is granted in part and denied in part, as follows:

a) the motion is granted with respect to counts VI · and VII of the plaintiff's

amended complaint as alleged against the defendants George Van Pelt, Klayton Johnson, Dale Shaul, and Charles Person, and such claims are dismissed.

b) the motion is denied with respect to count IV of the plaintiff's amended complaint as alleged against all of the defendants;

c) the motion is granted with respect to counts I, II, III, and VII of the plaintiff's amended complaint as alleged against the defendant Banner County, and such claims are dismissed; and

d) with respect to count VI of the plaintiff's amended complaint as alleged against the defendant Banner County,

 i) the motion is denied insofar as the plaintiff claims that he was wrongfully discharged for opposing and preparing to report alleged theft activities; and

 ii) in all other respects the motion is granted.

6) Pursuant to Fed.R.Civ.P. 54(b), there being no just reason for delay, final judgment shall be entered in Case No. 7:98CV5036 on counts I, II, III, V, and VII as alleged against all of the defendants, and on count VI as alleged against the individual defendants, George Van Pelt, Klayton Johnson, Dale Shaul, and Charles Person.

### JUDGMENT

Pursuant to the court's Memorandum **and Order** previously filed this date,

1) Final judgment is entered in favor of all Defendants and against Plaintiff on counts I, II, III, V, and VII alleged in Plaintiff's amended complaint, providing that Plaintiff shall take nothing thereon, and such claims are dismissed with prejudice as against all Defendants; and

2) Final judgment is entered in favor of Defendants George Van Pelt, Klayton Johnson, Dale Shaul, and Charles Person, individually, and against Plaintiff on count VI alleged in Plaintiff's amended complaint, providing that Plaintiff shall take nothing thereon, and such claim is dismissed with prejudice as against said individual Defendants.

This judgment, which is entered pursuant to Fed. R. Civ. P. 54(b), does not dispose of count IV of Plaintiff's amended complaint (section 1983 first amendment claim) as alleged against all Defendants, nor does it dispose of count VI of Plaintiff's amended complaint (state-law wrongful discharge claim) as alleged against Defendant Banner County.